**Rex M. HAGGARD, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Lee ALLEY, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Nos. 18333, 18354.**

United States Court of Appeals Eighth Circuit.

Dec. 20, 1966.

970

Kenneth K. Simon, Kansas City, Mo., Robert G. Duncan, Kansas City, Mo., for appellant Lee Alley.

J. Arnot Hill, Kansas City, Mo., for appellant Rex M. Haggard.

Clifford M. Spottsville, Asst. U. S. Atty., Kansas City, Mo., F. Russell Millin, U. S. Atty., Kansas City, Mo., for appellee.

Before MATTHES and LAY, Circuit Judges, and REGAN, District Judge.

LAY, Circuit Judge.

Appellants Alley and Haggard appeal convictions under Tit. 18, §§ 371, 656, 1005 and 2. The indictment was in fourteen counts charging appellants Haggard and Alley *along with* Peggy Maxine Martin, Lloyd Waymond Sewell, Louis A. Werner and Harold Barnes. Appellant Haggard was Vice President of Empire State Bank, Kansas City, Missouri. Offenses charged concerned losses of the bank, insured by Federal Deposit Insurance Corp., allegedly all manipulated by appellant Haggard through fictitious loans from October 1963 to November 1964.

Both appellants were found guilty. Haggard was given a sentence for five years on all counts to run concurrently under Tit. 18, § 4208(b). Appellant Alley was sentenced for five years on Counts I, II, IV and VI to run concurrently.

Defendant Barnes was found guilty under four counts. The trial court suspended an imposition of sentence and placed him on probation for three years. Defendants Martin and Sewell (husband and wife at time of trial) were found guilty, Martin on two counts, Sewell on one count. Their sentence was suspended and both placed on probation for three years. They do not appeal. Defendant Werner was charged with Haggard under Counts XIII and XIV. These counts were severed for separate trial after commencement of trial.

■ Appellant Haggard complains Counts (II and III), (IV and V) and (VI and VII) arise out of three separate transactions and do not constitute six separate offenses. Appellant overlooks his conviction was also on six other counts not contested. Haggard's sentence on each of the twelve counts was five years to run *concurrently*. Under these circumstances, as long as a conviction was proper upon at least one count, it will support the judgment. Barenblatt v. United States, 360 U.S. 109, 79 S.Ct. 1081, 3 L.Ed.2d 1115; Atkinson v. United States, 8 Cir., 344 F.2d 97. This is the only ground of error raised by appellant Haggard.

■ We have examined the complete record. Haggard's guilt on each count is difficult to dispute. His series of false entries on the ledger cards were made possible by his position of trust. Without the false entries, the concealment, the actual transfer of bank funds by cashier checks on fictitious notes, none of the losses could have taken place. We find no error as to appellant Haggard and affirm his conviction.

■ Appellant Alley raises more serious grounds: (1) misjoinder of parties defendant under Rule 8(b) Fed.R.Crim. P., and (2) abuse of discretion of the lower court in denying appellant's motion to sever, upon use of the confession of co-conspirator Barnes. A summary analysis of the indictment is necessary:[1]

Count I (conspiracy § 371)—Haggard, Alley, Barnes May 15, 1963 to November 23, 1964.[2]

"Before trial commenced, in Chambers, by leave of Court, the government dismissed Count 1 of the Indictment herein as to defendants Martin, Sewell and Werner ONLY: * * *."
We suggest, in the future the government file a written order for the court's signature, with specific dismissals from an indictment, as well as the specific deletions of overt acts or other surplusage being stricken.

1. Prior to trial the indictment joined all parties defendant in Count I. According to the appellant's and government's briefs on October 13, 1966, before actual trial commenced, the government dismissed the conspiracy charge set out in Count I as to defendants Martin, Sewell and Werner. These proceedings were not on the record, we find no court order, only some "x"s marked through the names of Sewell, Martin and Werner. *Apparently* three of the overt acts related to the above persons were also stricken. The docket entry of October 13, reads:

2. Again, the record is confusing. Overt act #9 pertaining to the May 13, 1963 transactions was "x"ed out. Yet the dates of

Count II (embezzlement § 656)—Haggard—Dec. 5, 1963 (aiding and abetting § 2)—Alley

Count III [3] (false entry § 1005)—Haggard—Dec. 5, 1963

Count IV (embezzlement § 656)—Haggard—Dec. 31, 1963 (aiding and abetting § 2)—Alley

Count V [4] (false entry § 1005)—Haggard—Jan. 3, 1964

Count VI (embezzlement § 656)—Haggard—May 18, 1964 (aiding and abetting § 2)—Alley

Count VII [5] (false entry § 1005)—Haggard—May 19, 1964

Count VIII [6] (false entry § 1005)—Haggard—Feb. 11, 1964 (aiding and abetting § 2)—Barnes

Count IX (false entry § 1005)—Haggard—March 31, 1964 (aiding and abetting § 2)—Barnes

Count X (false entry § 1005)—Haggard—April 15, 1964 (aiding and abetting § 2)—Barnes

Count XI [7] (false entry § 1005)—Haggard—Oct. 16, 1963 (aiding and abetting § 2)—Martin and Sewell

Count XII (false entry § 1005)—Haggard—Dec. 10, 1963 (aiding and abetting § 2)—Martin

Count XIII (embezzlement § 656)—Haggard—Sept. 14, 1964 (aiding and abetting § 2)—Werner

Count XIV (false entry § 1005)—Haggard—Sept. 24, 1964 (aiding and abetting § 2)—Werner

The court severed Counts XIII and XIV concerning Haggard and Werner.[8]

■■ Appellant properly challenges misjoinder under Rule 8(b) by a motion to sever. See Finnegan v. United States, 8 Cir., 204 F.2d 105, at 109. A motion

the conspiracy in the indictment extend from May 15, 1963 to November 23, 1964. The evidence shows the first joint offense charged between Haggard, Alley or Barnes is December 1963.

3. This is illustrative of the car dealer loans involved. The false entry of the "Calvin" account ($1,280.00) was part of the same transaction as Count II. The evidence shows a chattel mortgage and note in the name of "Eugene and Mary Calvin", secured by a 1962 Monza automobile were received by the bank allegedly from the used car dealer, Lee Alley. The note was discounted at the bank. Haggard entered in the loan ledger $1,280.00 allegedly owed by "Eugene and Mary Calvin". A cashier's check for $1,050.00 payable to Lee's Outlet, endorsed by Lee Alley, was issued by the bank, per Haggard's signature. This was then cashed on the same date at the bank. A deposit slip for $1,050.00 cash evidence this sum was deposited in Haggard's account on the same date. Further proof showed that "Eugene Calvin" was a fictitious name, the credit application was false as to his place of employment and address, and the automobile was shown not to be titled in Missouri.

4. This false entry of the "Beaty" account ($933.13) is related to the note and chattel mortgage involved in Count IV. This was another car dealer loan similar to n. 3 supra.

5. This false entry of the "Lewis" account ($2,480.10) is related to the note and

chattel mortgage involved in Count VI. See n. 3 supra.

6. Barnes and Alley were brothers-in-law. Barnes admitted forging the Miller, Shull (Ct. IX), Brunt (Ct. X) notes. These were similar to the preceding loans only the cashier's checks were endorsed by Alley and cashed or deposited by Alley in his account. According to Barnes' confession, these funds were to be used to pay off Barnes' loans at the bank. Alley could have been charged under these counts since his role was the same. *Appellant Alley clearly "participated" in these counts, which were properly joined with those in which Alley was charged, since the conspiracy charge implies a direct connection.* See United States v. Welsh, D.C., 15 F.R.D. 189.

7. Counts XI and XII involved direct loans procured with fictitious signatures signed by Martin and Sewell and by Martin alone. The first was in the name of "Wayne L. and Peggy Soule," dated October 16, 1963. Peggy Martin admitted signing the fictitious name of "Etta L. James" to the December 10, 1963, transaction (Ct. XII).

8. The lower court gave no particular reason for severance of the Werner counts except that it appeared the proof on the actual embezzlement under Count XI became confused. The car involved actually existed and was actually repossessed by the bank.

based upon misjoinder under Rule 8(b) does not, as the government assumes, rest upon the discretion of the trial court as does a motion to sever under Rule 14 for "prejudicial joinder". If multiple defendants are misjoined, the trial court has no discretion, since misjoinder is prejudicial per se. Metheany v. United States, 9 Cir., 365 F.2d 90; Ingram v. United States, 4 Cir., 272 F.2d 567; Ward v. United States, 110 U.S.App.D.C. 136, 289 F.2d 877; King v. United States, 1 Cir., 355 F.2d 700; United States v. Spector, 7 Cir., 326 F.2d 345. See also Coco v. United States, 8 Cir., 289 F.2d 33.[9]

■■■ Rule 8(b) of the Fed.R.Crim. P. permits the joinder of multiple defendants in the same indictment if they are alleged to have "participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Broad interpretation of Rule 8(b) is undoubtedly encouraged in the interests of more efficient administration of criminal trials.[10] *This in no way detracts from the rights of individuals to avoid prejudicial joinder. The trial court can al-* *ways entertain a motion to sever under Rule 14 to determine prejudice to individual defendants.*[11] Opper v. United States, 348 U.S. 84 at 95, 75 S.Ct. 158, 99 L.Ed. 101; Slocum v. United States, 8 Cir., 325 F.2d 465. In Kivette v. United States, 5 Cir., 230 F.2d 749, under Rule 8(b) it becomes clear that "participation" by a defendant in a single transaction does not require actual conduct constituting a crime. Such an interpretation logically follows from the express language of Rule 8(b) which does not require joinder of each defendant on each count, yet insists upon "participation." Nor do we think that "participation" in "the same series" requires "participation" in each transaction of the series. See Wiley v. United States, 4 Cir., 277 F.2d 820. The language of Rule 8(b) assumes certain evidence may be admitted against one defendant not necessarily applicable to another. Daley v. United States, 231 F.2d 123, 125 (1 Cir., 1956). However, appellant urges the indictment is deficient in failing to allege a common scheme or plan involving Alley with Martin or Sewell or Werner.[12]

**9.** In McElroy v. United States, 164 U.S. 76, 17 S.Ct. 31, 41 L.Ed. 355, holding such a misjoinder requires a separate trial, Mr. Justice Fuller reasoned:

" * * * It cannot be said in such case that all the defendants may not have been embarrassed and prejudiced in their defense, or that the attention of the jury may not have been distracted to their injury in passing upon distinct and independent transactions. * * *" 164 U.S. at 81, 17 S.Ct. at 33.

**10.** The word "participation" has been interpreted to apply to the indictment of four persons charged with maintaining a gambling table and an assault by one of the defendants against a customer at the gambling table. See Scheve v. United States, 87 U.S.App.D.C. 289, 184 F.2d 695. A "transaction" includes the making of several false affidavits by several defendants for deferred selective service classification of one of the defendants. Cataneo v. United States, 167 F.2d 820. Rule 8(b) requires the court's "balancing conflicting interests":

"(1) speed, efficiency and convenience in the functioning of the federal judicial machinery; against (2) the right of the accused to a fair trial, without any substantial prejudice to that right occasioned by the joinder of offenses and/or defendants." 167 F.2d at 823.

**11.** The trial court's severance of Counts XIII and XIV as to Werner and Haggard exemplifies this procedure.

**12.** Appellant relies upon Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557, holding where one conspiracy is charged in an indictment, but the evidence shows several small conspiracies, there is material variance prejudicial to the defendants which requires a new trial. In that case, as here, there was a common defendant through which the other defendants worked to perpetrate a fraud against the government. The court points out, there was "the hub" and the "spokes" but there was no "common rim" around the wheel. Appellant therefore argues that *Kotteakos* definitely shows that there was a misjoinder herein. There

The question we must determine is whether appellant "participated * * * in the same series" with the offenses of Haggard in October of 1963 (aided and abetted by Martin and Sewell) and December of 1963 (aided and abetted by Martin alone).

■ The indictment demonstrates (a) a common participant throughout all counts, (b) a similar scheme to defraud the same bank in all counts, (c) identical transactions in each instance,[13] (d) all offenses occurred within the defined period of time alleged in the conspiracy count of Alley et al., (e) defendants are alleged to be "aiders and abettors" to the common participant.[14] Under these circumstances one can imply a "clear discernible pattern of action" involving Haggard and his accomplices in the "same series of transactions." United States v. Rosenfield, 7 Cir., 235 F.2d 544; Kleven v. United States, 8 Cir., 240 F.2d 270; Roth v. United States, 10 Cir., 339 F.2d 863; Wiley v. United States, 4 Cir., supra; United States v. Gilbar Pharmacy, Inc., (S.D.N.Y.) 221 F.Supp. 160 (1963).

■ Joinder must be viewed on a case by case basis. If the indictment invites "joint proof" [15] such as here, e. g. partial payment of one loan with another, or infers a common pattern of action, prima facie joinder is shown. The jury should be able to see how each piece fits together even though strangers "aid and abet" the common thief at successive stages of the overall fraud. See Rakes v. United States, 4 Cir., 169 F.2d 739.[16] The trial judge can make this decision without jeopardy. Upon a determination of prejudice he can always order severance under Rule 14 if proof fails to support proper joinder. Schaffer v.

---

may be merit in argument of appellant, but at least under the status of the present indictment we must disagree. The *Kotteakos* case involved the question of variance whereas this involves a question of joinder under Rule 8(b). The lower court, in *Kotteakos* did not attempt to segregate testimony as to each conspiracy or give any limiting instruction. We do not feel, at least in this instance, the same test should be applied. In order to have multiple defendants "participate" under Rule 8(b), the rule does not require there be a "common rim" around the wheel. See Orfield, Joinder in Federal Criminal Procedure, 26 F.R.D. 23, 27–28.

13. Counts I–XII all involve the common plan by Haggard through his fiduciary position of trust, processing a false application, a worthless chattel mortgage or forged note, and the diversion of the bank's funds to himself or one of the other defendants.

14. Tit. 18, U.S.C. § 2; to "aid and abet" one need only "associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seeks by his action to make it succeed." United States v. Peoni, 2 Cir., 100 F.2d 401, 402.

15. Cf. King v. United States, where the court said:
"* * * Where, however, there are no presumptive benefits from joint proof of facts relevant to all the acts or transactions, there is no 'series,' Rule 8(b) comes to an end, and joinder is impermissible."
355 F.2d at p. 704.

16. Although the trial court in the *Rakes* case granted severance to several defendants under Rule 14 an additional claim of severance was made by the appellant before the Court of Appeals of the 4th Circuit. The case involved a "check-kiting" scheme over a period of months. The facts are very similar to the present appeal and the court in discussing severance appropriately states:
"* * * These other persons, moreover, were alleged to have taken part in the same check-kiting scheme (and mostly in connection with the same checks) in which appellant was alleged to have been engaged. They were officers of the various banks and signers in various capacities on the checks or notes which made up the operation. If a person knowingly aids and abets, in conjunction with various others, in some of a series of related transactions, he can hardly be heard to complain if he is charged in company with his fellow participants. The ends of justice are not served in such a case by a multiplicity of separate indictments for each participant and each transaction. * * *" 169 F.2d at 743.

United States, 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921; Golliher v. United States, 8 Cir., 362 F.2d 594. And, of course, such an order is reviewable here. When the *prima facie* common pattern of action (of the indictment) breaks down to proof only of isolated similar transactions, then the trial court should become "particularly sensitive" to prejudicial misjoinder. 362 U.S. at 516, 80 S.Ct. 945.[17]

Since we find proper joinder under Rule 8, the motion to sever must be directed to the trial court's discretion. We do not feel the appellant Alley was in any way prejudiced by the joinder of Counts XI and XII. As we have stated, appellant Alley was involved in the other ten counts, but charged in only four. We find no error in the trial court's denial to sever. The judge supervised the taking of notes by the jury during the trial and required the government to marshall the evidence as to each defendant. The variations in the proof, of course, related to the different notes and mortgages involved. The instructions meticulously separated the counts and the evidence as to each of the defendants.

Appellant also claims prejudicial joinder by reason of the admission of co-defendant Barnes' confession. The admission of a co-defendant's statement, with proper cautionary instructions, will not require reversal with directions to sever, except in extreme cases. Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278;[18] Fisher v. United States, 8 Cir., 324 F.2d 775, cert.

den. 377 U.S. 999, 84 S.Ct. 1935, 12 L.Ed. 2d 1049; Golliher v. United States, 8 Cir., 362 F.2d 594; Mee v. United States, 8 Cir., 316 F.2d 467, cert. den. 377 U.S. 997, 84 S.Ct. 1923, 12 L.Ed.2d 1049, reh. den. 379 U.S. 873, 85 S.Ct. 20, 13 L.Ed. 2d 80; Costello v. United States, 8 Cir., 255 F.2d 389, cert. den. 358 U.S. 830, 79 S.Ct. 51, 3 L.Ed.2d 69, reh. den. 358 U.S. 901, 79 S.Ct. 220, 3 L.Ed.2d 152; Kansas City Star Co. v. United States, 8 Cir., 240 F.2d 643. This approach has been criticized on the theory it is difficult to avoid prejudice with only a cautionary instruction. See Bozza v. United States, 2 Cir., 365 F.2d 206, where the court holds despite cautionary instructions the government must either sever or avoid use of such a confession where more than one defendant is being tried.[19] Such a decision does point up the necessity of the trial court viewing quite strictly the use of coconspirators' confessions in multiple joinder situations. In the present case the trial court did give a cautionary instruction limiting Barnes' statement to the defendant Barnes. However, in addition, Alley's participation in the offenses committed by Barnes is shown by independent evidence. There was no "prejudicial spillover effect" on appellant. The confession barely corroborated what the government had already established.

Appellant Alley was not prejudiced in any respect.

Judgment is affirmed.

17. A broad construction of the indictment before trial should be subject to examination for bad faith in multiple joinder cases, e. g. joinder of conspiracy count where total proof is lacking as to defendants interrelationship. See Schaffer v. United States, 2 Cir., 266 F.2d 435 at 441. Appellant does not claim any bad faith here.

18. See also, State v. Johnson, 31 N.J. 489, 158 A.2d 11, aff'd in Johnson and Cassidy v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

19. In Delli Paoli v. United States, supra, Mr. Justice Burton stated:
"It is a basic premise of our jury system that the court states the law to the jury and that the jury applies that law to the facts as the jury finds them. Unless we proceed on the basis that the jury will follow the court's instructions where those instructions are clear and the circumstances are such that the jury can reasonably be expected to follow them, the jury system makes little sense. * * *" 352 U.S. at 242, 77 S.Ct. at 300.