UNITED STATES of America, Appellee,

v.

Alan Jeffrey SEIDEL, Appellant.

No. 77–1382.

United States Court of Appeals, Fourth Circuit.

Reheard Nov. 8, 1979.

Decided Feb. 20, 1980.

Rehearing and Rehearing En Banc Denied March 24, 1980.

---

Ranson Davis, Howard L. Cardin, Baltimore, Md. (H. Russell Smouse, Baltimore, Md., on brief), for appellant.

Robert P. Trout, Asst. U. S. Atty., Baltimore, Md. (Jervis S. Finney, U. S. Atty. and Marsha A. Ostrer, Asst. U. S. Atty., Baltimore, Md., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, RUSSELL and SPROUSE, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

This appeal, heretofore ruled on by us in an opinion reported in 588 F.2d 71, is now before us upon a grant of a rehearing. A proper consideration of the issues on rehearing requires some restatement of the proceedings in the district court. As indicated in the earlier opinion, the indictment on which the defendants Seidel and Kaplan were tried and convicted charged essentially two broad offenses, broken down in several separate counts. One of such offenses charged the illegal manufacture, installation, and explosion of a pipe bomb. The pipe bomb, after manufacture, was installed in an automobile of one Dobb. When Dobb attempted to start his automobile, this pipe bomb exploded, severely injuring Dobb and largely destroying his vehicle. All events connected with this offense of manufacturing, installing, and exploding a pipe bomb, took place in June 1976. Both the defendant Kaplan and the defendant Seidel were charged with these offenses. The other offense, broken down into several separate counts, involved only Kaplan,[1] and related

---

1. Actually a third defendant Harris was involved in the second incident, charged in a conspiracy count with Kaplan. The Court severed his case on a Rule 14 motion, presumably since the evidence connected with the first incident would not be admissible in his separate

to the manufacture and sale of an illegal pipe bomb in August 1976 to a government agent posing as a "hit man."

Seidel moved for severance for trial of the June and August offenses and of defendants. He based his motion on the claim that he was in no way implicated in the August offense and would be prejudiced by a joint trial of the two offenses. The district court denied the motion, stating that it made "sense to try the August incident at the same time, given that the August incident was a direct outgrowth of the June incident." The Court added that it "envision[ed] no problem in instructing the jury so as to avoid any confusion which might be prejudicial to Seidel. The jury will be cautioned that Seidel is not charged with and did not commit any offenses in August and the fact that offenses may have been committed in August can have no bearing on his guilt in the June events." The case accordingly proceeded to trial on the two offenses.

After submission of the case to the jury Kaplan and Seidel were convicted on the counts connected with the June incident and Kaplan alone was convicted on the counts arising out of the August incident. On appeal this panel affirmed Kaplan's conviction on all counts, but reversed Seidel's conviction.[2]

The basis for the reversal of Seidel's conviction was a finding of improper joinder of defendants in violation of the provisions of Rule 8(b), Fed.R.Crim.P. After the filing of the panel opinion, the Government submitted a petition for rehearing in which it contended that, even if there had been erroneous joinder of defendants, the misjoinder was harmless within Rule 52(a), Fed.R.Crim.P. The basis for its argument to this effect was the contention that all the evidence admitted by the district court in support of the second offense charged, though involving different defendants, was plainly admissible in support of the charge made

against both Seidel and Kaplan in connection with the June incident, and that, if this contention were accepted, Seidel was not prejudiced by a consolidation of the June and August offenses. In granting rehearing, the Court substantially limited the issues to whether error in misjoinder of defendants under Rule 8(b) was harmless under the facts of this case and thus not ground for reversal of Seidel's conviction. The parties were given leave to brief and to argue orally their contentions on this issue. After consideration of oral arguments and written briefs, we vacate so much of the earlier opinion of the Court as reversed the conviction of Seidel and ordered a new trial in his favor, and we now affirm his conviction. We do not disturb the conviction of Kaplan as affirmed in our earlier opinion.

We begin a discussion of the issue before us on rehearing by assuming again that the joinder of the two offenses, in only one of which the defendant Seidel was involved, was improper under Rule 8(b). The Government's basic argument, however, is that, assuming, though not admitting, improper joinder, such misjoinder does not mandate automatic reversal of the conviction of a defendant such as Seidel, even though he was joined at trial with another defendant under a separate charge, if it can be fairly said that he suffered no prejudice to his right to a fair trial by such joint trial. It asserts that the harmless error rule declared in Rule 52(a), Fed.R.Crim.P., arms this Court with the power to treat misjoinder under such circumstances as harmless, thereby avoiding an unnecessary reversal of the conviction. The exercise of such power would actually serve, the Government argues, the design and purpose of Rule 8(b), which the Supreme Court has recently declared to be " 'to promote economy and efficiency [in judicial administration] and to avoid a multiplicity of trials, where these objectives can be achieved without substan-

---

trial under the count charging the August incident. The ruling was thus consistent with the basis on which the district court refused to sever the other defendants and proceeded, so far as Kaplan and Seidel were concerned, to try the two offenses together.

2. *United States v. Kaplan*, (4th Cir. 1978) 588 F.2d 71.

tial prejudice to the right of the defendants to a fair trial,'"[3] or, as another Court has said, was intended to advance the "'goal of maximum trial convenience consistent with minimum prejudice.'"[4] To require a *per se* automatic retrial in a situation where the joint trial, though in violation of the literal language of Rule 8(b), was not tainted by any prejudice to the complaining defendant would, the Government says, scarcely promote judicial efficiency, avoid multiplicity of trials, or contribute to the "goal of maximum trial convenience consistent with minimum prejudice," all of which, as we have seen, are intended to be achieved by the Rule.[5] And it cites a large body of authorities in support of this contention that, even assuming that there was misjoinder under Rule 8(b), reversal of the joint trial of the misjoined offenses is unnecessary within the purpose of Rule 8(b) if the complaining defendant was not prejudiced by the joint trial.[6] The cases reach this result by invoking the rule of harmless error as represented in Rule 52(a), Fed.R.Crim.P.[7]

The principle thus relied upon by the Government has found application in those cases where the absence of prejudice arises out of the fact that evidence of the joined offense would have been admissible in any event in proof of the other offense. In those cases the misjoinder of defendants, if erroneous, has been found in the cited cases to be within the harmless error rule as stated by Rule 52(a).[8] A typical instance of this situation where the misjoinder was found not to impose any prejudice on the complaining defendant and accordingly was to be treated as harmless requiring no reversal of the joint trial is illustrated by *Drew v. United States*, (D.C. Cir. 1964) 118 U.S.App.D.C. 11, 16, 331 F.2d 85. In that case the Court, using language uniquely appropriate to this case, said that

if the facts surrounding the two or more crimes on trial show that there is a rea-

3. *Bruton v. United States*, (1968) 391 U.S. 123, 131, n. 6, 88 S.Ct. 1620, 1625, 20 L.Ed.2d 476, quoting *Daley v. United States*, (1st Cir. 1956) 231 F.2d 123, 125.

4. *United States v. Roselli*, (9th Cir. 1970) 432 F.2d 879, 899, *cert. denied*, 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971), *reh. denied*, 402 U.S. 924, 91 S.Ct. 1366, 28 L.Ed.2d 665, quoting 8 Moore's Federal Practice at 8–36.

   *See also Parker v. United States*, (9th Cir. 1968) 404 F.2d 1193, 1196, *cert. denied*, 394 U.S. 1004, 89 S.Ct. 1602, 22 L.Ed.2d 782, *reh. denied*, 395 U.S. 941, 89 S.Ct. 2003, 23 L.Ed.2d 460 (1969), where the court said that joint trials, if not prejudicial to the right of the defendant to a fair trial, "expedites the administration of justice, reduces the congestion of trial dockets, conserves judicial time, lessens the burden upon citizens who must sacrifice both time and money to serve upon juries, and avoids the necessity of recalling witnesses who would otherwise be called upon to testify only once."

5. *Bruton v. United States*, 391 U.S. at 131, n. 6, 88 S.Ct. at 1625, n. 6; *United States v. Roselli*, 432 F.2d at 899; *Parker v. United States*, 404 F.2d at 1196.

6. *Cataneo v. United States*, (4th Cir. 1948) 167 F.2d 820, 823; *United States v. Ochs*, (2d Cir. 1979) 595 F.2d 1247, 1260, n. 11, U.S. appeal pending; *United States v. Martin*, (9th Cir. 1977) 567 F.2d 849, 854; *United States v. Turbide*, (2d Cir. 1977) 558 F.2d 1053, 1061, *cert. denied*, 434 U.S. 934, 98 S.Ct. 421, 54 L.Ed.2d 293; *United States v. Payden*, (2d Cir. 1976)

536 F.2d 541, 543, *cert. denied*, 429 U.S. 923, 97 S.Ct. 323, 50 L.Ed.2d 291; *United States v. Franks*, (6th Cir. 1975) 511 F.2d 25, 28–29, *cert. denied*, 422 U.S. 1042, 95 S.Ct. 2656, 45 L.Ed.2d 693; *United States v. Weiss*, (2d Cir. 1974) 491 F.2d 460, 466–67, *cert. denied*, 419 U.S. 833, 95 S.Ct. 58, 42 L.Ed.2d 59; *United States v. Friedman*, (9th Cir. 1971) 445 F.2d 1076, 1083, *cert. denied*, 404 U.S. 958, 92 S.Ct. 326, 30 L.Ed.2d 275; *United States v. Daniels*, (D.C. Cir. 1970), 141 U.S.App.D.C. 223, 227–28, 437 F.2d 656, 660–61; *United States v. Roselli*, 432 F.2d at 899; *Baker v. United States*, (D.C. Cir. 1968) 131 U.S.App.D.C. 7, 20, 401 F.2d 958, 971, *cert. denied*, 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970); *United States v. Granello*, (2d Cir. 1966) 365 F.2d 990, 995, *cert. denied,* 386 U.S. 1019, 87 S.Ct. 1367, 18 L.Ed.2d 458 (1967).

   *See also United States v. Hubbard*, (D.C.D.C. 1979) 474 F.Supp. 64 at 87:
   "The predominant factor in the analysis of a joinder problem is the commonality of proof. *Baker v. United States*, 131 U.S.App. D.C. 7, 20–21, 401 F.2d 958, 971–72 (1978) (per curiam), *cert. denied*, 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970). Thus, when there is a substantial degree of overlap in the evidence that will be adduced to prove the separate charges, the various allegations may be joined."

7. *See* cases cited in note 6.

8. *See* cases cited in note 6 as well as note 4.

sonable probability that the same person committed both crimes due to the concurrence of unusual or distinctive facts relating to the manner in which the crimes were committed, the evidence of one would be admissible in the trial of the other to prove identity. In such cases the prejudice that might result from the jury's hearing the evidence of the other crime in a joint trial would be no different from that possible in separate trials.[9]

A similar conclusion that reversal because of a violation of Rule 8(b) is not compelled if the complaining defendant was not prejudiced, because substantially the same facts would have been adduced if separate trials had been had, was expressed in *United States v. Daniels*, 141 U.S.App.D.C. at 227, 437 F.2d at 661:

> We do not think Daniels could have been prejudiced by the trial alongside Wiseman, even if the joinder were improper. Fundamentally, there was no prejudice because, aside from the fact that the jury was instructed to consider only evidence introduced against each appellant separately, any trial of Daniels would have required the introduction of most of the evidence in regard to Wiseman that was offered by both the prosecution and by Daniels in his own defense. Appellant Daniels' own brief finds it difficult to discuss his case without referring to the facts about Wiseman. His brief states, "The allegations against appellant arise out of an incident in which Wiseman, but not appellant, was involved. Consequently it becomes necessary to set out herein the facts relating to Wiseman, so that the evidence pertaining to appellant may be viewed in its proper perspective." Both the prosecution and the defense would have found precisely the same difficulty in a separate trial of appellant Daniels.

Likewise in United States v. Weiss, 491 F.2d at 467, the Court, in sustaining on the same ground a conviction against a charge of misjoinder of offenses against multiple defendants, said:

> While joinder of two or more offenses against the same defendant have [sic] been permitted pursuant to Rule 8(a) in the decisions cited by the government, this hardly supports joinder of different defendants upon separate charges under Rule 8(b), which is more restrictive. However, we need not decide this difficult question in the present case since, even assuming Mrs. Weiss was improperly joined, she has failed to show any prejudice to herself as a result of the joinder. If Count 19 had been tried separately, the government would have been allowed to introduce most if not all of the proof of the underlying fraudulent scheme in order to establish her motive, as Weiss' wife, to play a major part in obstructing the government's investigation into that scheme by removing material proof of her husband's participation in it. Lastly Mrs. Weiss was further protected against "spillover" prejudice by the court's instructions to the jury, repeated on four occasions, that it must consider each charge against each defendant separately on the basis solely of the evidence introduced with respect to the defendant on that count. That the jury followed this instruction is evidenced by its specific request for a rereading of the court's charge relating to Mrs. Weiss.

(citations omitted).

Recently in *United States v. Franks*, 511 F.2d at 29–30, it was decided:

> Even if Franks, Britton and Mitchell were joined contrary to Rule 8(b), such misjoinder most likely would be harmless error because evidence of the explosions would be admissible against Mitchell in establishing his knowledge that the transportation of the blasting caps would be interstate and because evidence of the interstate transportation of the blasting caps would be admissible against Franks and Britton in establishing the plan or scheme of the bombings.[10]

---

9. 331 F.2d at 9.

10. *United States v. Sutton*, (6th Cir. 1979) 605 F.2d 260, 270–71, seems contrary to *Franks*. *En banc* rehearing, however, has been granted in *Sutton*, and heard on April 2, 1980.

Finally, in *United States v. Turbide*, 558 F.2d at 1061, the Second Circuit, in summarizing the repeated decisions of that Court, said:

It is well settled in this circuit that the harmless error doctrine applies to misjoinder of counts under Fed.R.Crim.P. 8(b). In three separate decisions, this court has concluded that when evidence tending to prove the charge that should have been severed would nevertheless have been admissible at the trial of the objecting codefendant, and was admitted subject to appropriate limiting instructions, any error was harmless.

The facts of this case bring it clearly within the principles stated in the foregoing cases. A critical issue in the June incident was the identity of the person who made the pipe bombs and concealed them in Dobb's car, only one of which exploded. There was, however, no eye-witness to the manufacture and installation of these bombs and thus no direct evidence to establish the identity of the person who had installed them. This fact thus had to be established circumstantially. The Government had sufficient information to justify a confidence on its part that Kaplan had manufactured and installed the bombs. Its problem was to secure relevant circumstantial evidence to support this belief. To do this the Government used an undercover agent to purchase a bomb from Kaplan for the purported purpose of blowing up a Cadillac car in a manner similar to that used in bombing Dobb's car. Kaplan agreed to prepare such a bomb and to give instructions for its installation. Pursuant to this understanding, Kaplan made and delivered to the undercover agent the bomb requested. When compared with the unexploded bomb taken from the Dobb car, this bomb delivered by Kaplan to the undercover agent, was identical in construction, except for size, with the unexploded bomb taken from Dobb's car. An explanation for the difference in size of the two bombs was given by Kaplan, who said that in an earlier "job" he had used two bombs; however, this larger bomb was prepared to do what the earlier two would do. Kaplan also gave the under-

cover agent exact instructions as to how and where to place the bomb in the Cadillac car. These instructions conformed exactly with the manner in which the bombs had been concealed in the Dobb car. He added in his conversation with the undercover agent that he had "done this [*i. e.*, concealing two bombs in a Cadillac,] before but it didn't kill the guy . . .," which was what had happened in the explosion of the Dobb car.

All of this evidence, though circumstantial, was sufficient to sustain a finding that Kaplan was the manufacturer, and either the installer, or the aider in the installation, of the bomb in Dobb's car. When this evidence was coupled with other evidence in the case connecting Seidel with Kaplan, particularly the telephone conversation of Kaplan with an "Alan" after the June incident in which conversation Kaplan had told "Alan" that he had done what "Alan" wanted and now he (Kaplan) wanted his money, was sufficient to support the conviction of Seidel. But, as we have seen, an essential part of this evidence was the identification of Kaplan as the manufacturer of the bomb and this could only be done by proving substantially the same evidence as would be necessary to convict Kaplan on the August incident. Manifestly, then, the August incident in its entirety would have been provable in any separate trial of the June incident. There could thus have been no prejudice to Seidel in trying the two offenses together. Such joint trial permitted the Court to avoid two trials involving the same evidence. Moreover, the trial judge gave appropriate instructions, as had the Court in *United States v. Weiss*, 491 F.2d at 466–67, that Seidel was not involved in the August incident, was not being tried on that offense, and could not be convicted on such offense. No automatic reversal of Seidel's conviction is accordingly required, even if there were a misjoinder of offenses at trial under the principle stated and applied in the aforesaid cases.

It is Seidel's position, however, that, whatever the rule may be in some circuits, the rule in this Circuit, as well as in many

of the other circuits and as stated by the leading texts, is that a misjoinder under 8(b) compels an automatic reversal, irrespective of any prejudice. He relies on *United States v. Whitehead*, (4th Cir. 1976) 539 F.2d 1023, and *Ingram v. United States*, (4th Cir. 1959) 272 F.2d 567, for the rule in this Circuit. We regard neither *Ingram* nor *Whitehead* as decisive on the real point in issue here. In neither of those cases was the Court concerned with a situation such as here where the evidence under the count not naming the complaining defendant was clearly admissible under and relevant to the count in which such defendant was named. In both *Ingram* and *Whitehead*, the Court, on the contrary, was strictly concerned with the joinder of two independent and separate offenses, in the proof of which there was no "commonality of proof" or "overlap in the evidence," *i. e.*, in which the evidence of one offense would not have been admissible in proof of the other. Thus in *Ingram* the offenses charged were two separate acts of possession of nontaxpaid liquor. A number of defendants were charged in connection with each act of possession. The only link between the two offenses was that Ingram was charged as one of the participants in both of the offenses. Except for Ingram, however, no other participant in one offense had any connection with the other offense charged. Nor was there any contention that the evidence in one count would have been admissible in the other, had the two offenses been tried separately. To repeat, it was in that factual context, and addressing that factual situation alone, that the decision in *Ingram* must be considered as controlling. And because this is so, *Ingram* has not been found applicable in the situation, where, as here, substantially all the evidence in one charge or count would be relevant to the proof of the actual crime charged in the other count. That difference was perceptively noted by Judge Friendly in *United States v. Granello*, 365 F.2d at 995, where, in distinguishing *Ingram*, he said:

11. The same distinction was made, among others, in *Baker v. United States*, 131 U.S.App. D.C. at 23, n. 63, 401 F.2d at 974, n. 63, and

We see no reason why the undoubted truth that an appeal claiming misjoinder under Rule 8(b) raises a question of law in the strict sense, whereas an appeal from denial of severance under Rule 14 normally raises only one of abuse of discretion, should carry exemption from the harmless error rule, F.R.Cr.P. 52(a), as a corollary. We do not consider *Ingram v. United States*, 272 F.2d 567 (4 Cir. 1959), approvingly cited in 8 Moore, supra at 8–14 & 8–15, as so holding, to establish any such general principle; the joinder in that case was of two sets of defendants whose offenses were "in no way connected," and the Government's introduction against one set of proof wholly irrelevant to the other was plainly prejudicial.[11]

As Judge Friendly thus makes clear, the comments of the Court in *Ingram* on the scope and application of Rule 52(a), the harmless error rule, to misjoinders under Rule 8(b) was at most mere dictum in a context such as we confront here. This follows because indisputably where evidence of one offense would be inadmissible in the trial of another strictly independent and unrelated offense (which was the case, as we have seen, in *Ingram* ) there would be prejudice in the joint trial of the two offenses and thus no reason in such a situation to consider the harmless error rule, which requires as the very basis for its application the absence of prejudice to the complaining defendant.

It is obvious, too, that, in its discussion of the scope of Rule 52(a) the Court in *Ingram* misapprehended the modern application of the harmless error rule. It assumed that Rule 52(a) would only protect against an error which could be catalogued as a "mere technicality," and could never be extended to cover a violation of "a fundamental procedural rule designed to prevent 'mass trials,'" such as Rule 8(b); 272 F.2d 570–71. In following its reasoning that Rule 52(a) applied only to "technical errors"

*United States v. Olin Corp.*, (W.D.N.Y.1979) 465 F.Supp. 1120, 1129, n. 6.

the Court, though, overlooked the difference in language in Rule 52(a) from that used in what is referred to as the Rule's statutory source. It may be accepted that Rule 52(a) had as its source the earlier Section 269 of the Judicial Code, 28 U.S.C. § 391, 40 Stats. 1181, which did declare that appellate courts should give judgment "without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties." Rule 52(a), however, significantly omits the words "technical errors" in its draft and substitutes the general term, "[a]ny error." As the court remarked in *Brulay v. United States*, (9th Cir. 1967) 383 F.2d 345, 351, *cert. denied*, 389 U.S. 986, 88 S.Ct. 469, 19 L.Ed.2d 478, "To us these changes [*i. e.*, from "technical errors" to "any error"] indicate a Congressional intention to emphasize the concept that any error not causing detriment should be disregarded and to make it clear that variances are to be treated no differently from other defects."

In keeping with this enlargement of the Court's power under Rule 52(a), the harmless error authority has evolved from one, which under § 269 was confined to "technical errors" or errors of form, into one which includes errors of all kinds, even errors of constitutional dimensions.[12] For illustrations of cases in which even constitutional errors have been held not to require automatic reversals of a criminal conviction, *see Schneble v. Florida*, (1972) 405 U.S. 427, 430, 92 S.Ct. 1056, 1058, 31 L.Ed.2d 340; *Harrington v. California*, (1969) 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284; *Chapman v. California*, (1967) 386 U.S. 18,

22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705.[13] A rule of harmless error which may cover a constitutional error is assuredly sufficiently broad to embrace what *Ingram* referred to as a "procedural error," even one "designed to prevent 'mass trials',"[14] or, as the Court said in *United States v. Graci*, (3d Cir. 1974) 504 F.2d 411, 413–14, is one representing an erroneous application of a procedural rule with a statutory inheritance. In fact, it seems illogical in the extreme to argue that, although the harmless error rule may be held applicable to constitutional violations, it cannot be found applicable to a violation of a mere procedural rule.[15] It is evident, then, that the applicability of the harmless error rule enunciated in Rule 52(a) by *Ingram* is entirely different from, and much more restricted than, that which has been developed in subsequent decisions of the Supreme Court as well as of federal courts generally, and its dictum on such applicability can no longer be looked to as a guide on the construction of Rule 52(a) either in the Rule 8 context or in any other situation.

In *United States v. Whitehead*, 539 F.2d 1023, the other case from this Circuit relied on by Seidel, the only "nexus between two defendants joined for trial" was that each, without any concert or connection with the other, had made separate and independent sales of cocaine on dates almost two weeks apart to the same individual. Obviously, one offense had not the slightest relevance to the other and the evidence of the other offense against the nonparticipating defendant would have been inadmissible against such defendant. There was accord-

12. *See*, Note, *Harmless Error and Misjoinder Under the Federal Rules of Criminal Procedure: A Narrowing Division of Opinion*, 6 Hofstra L.Rev. 533, 540 (1978):

"Consequently, the doctrine embodied in the present law [*i. e.*, Rule 52, Fed.R.Crim.P.] has evolved from one governing 'technical errors' and 'errors of form' to one which is now held applicable to errors of all kinds, including errors of constitutional dimension."

13. There is but one difference between a claim of harmless error where the error is of constitutional dimension and where it involves a lesser right, such as that afforded by a procedural rule. In the constitutional error situation, the

Court must apply the "harmless beyond a reasonable doubt" rule, while in other situations, the "harmless error" rule is applicable if no substantial rights of the accused were affected. *United States v. Panczko*, (7th Cir. 1970) 429 F.2d 683, 686–87, *cert. denied*, 400 U.S. 946, 91 S.Ct. 253, 27 L.Ed.2d 252.

14. *Cf.*, *Bruton v. United States*, 391 U.S. at 131, n. 6, 88 S.Ct. at 1625 n. 6; *Cataneo v. United States*, 167 F.2d at 822–23; *Daley v. United States*, 231 F.2d at 125–26.

15. *Ingram v. United States*, 272 F.2d at 570–71.

ingly no reason to consider the harmless error rule nor was it adverted to in the Court's opinion. That decision is accordingly irrelevant.

And the manifest irrelevance to our question of both *Ingram* and *Whitehead* was clearly perceived by this Court in *United States v. Jamar,* (4th Cir. 1977) 561 F.2d 1103, 1106, n. 4, where, after remarking that misjoinder under Rule 8(b) "is in itself error," added significantly: "We do not imply, however, that such an error is automatic ground for reversal," citing Judge Friendly's opinion in *United States v. Granello,* 365 F.2d 990. In short, what *Jamar,* which is the most recent decision from this Court on the point before us, is declaring is that the application of the harmless error rule in the misjoinder context is an open question in this Circuit; it, however, by its citation of *Granello,* indicates fairly clearly that it inclines to the view stated by Judge Friendly in that case.[16]

We recognize that, even though we may regard *Ingram* and *Whitehead* as not controlling on the point in issue, both Professor Moore and Professor Wright, whose opinions in this area are never to be taken lightly, suggest that such misjoinder may never be regarded as harmless error.[17] The reason given in both instances for such view is expressed by Professor Wright thus:

> If misjoinder can be regarded as harmless error, then reversal could be had only for prejudice whether the initial joinder was proper or improper. If that were true, it

would be pointless to define in Rule 8 the limits on joinder, since it would no longer be of significance whether those limits were complied with, and the draftsmen would have been better advised to allow unlimited joinder of offenses and defendants, subject to the power of the court to give relief if the joinder were prejudicial. They did not follow such a course, and the cases seem quite right that hold that misjoinder can never be harmless error.

This reasoning, however, has been effectively answered by the Court in *Baker v. United States,* 131 U.S.App.D.C. at 22, 401 F.2d at 973–74:

> Appellant's reasoning seems to be that the necessary implication of the Rule's provision that certain offenses 'may' be joined is that offenses not within its terms may *not* be joined; and that any inquiry into prejudice after a finding of misjoinder would be effectively to read Rule 8 out of the law, since Rule 14 makes separate provision for dealing with *prejudicial* joinder.

But we think this argument ignores an important distinction between the prejudice that compels an appellate court to reverse for trial *error,* and the prejudicial effect of joinder, even when proper, which a trial judge must weigh in exercising his Rule 14 discretion. Because of the language of Rule 8 and the relationship of Rule 8 to Rule 14, it may readily be conceded that a trial judge has no

---

16. *See also United States v. Mandel,* (D.Md. 1976) 415 F.Supp. 1033, 1047, aff'd. by equally divided *en banc* court, 602 F.2d 653. In that case, there were a large number of counts but there were two basic transactions; one involving the Marlboro race track and the other a real estate development at Ray's Point, Maryland. The defendants Cory and Kovens were not named in the counts involving the Ray's Point development. They claimed misjoinder under 8(b). In refusing severance for misjoinder of the two incidents, the district court said:

> In holding that joinder is proper, the Court has considered several factors. First, the language of Rule 8(b) is very broad, and it has also been interpreted broadly by the Fourth Circuit in *Cataneo, supra.* Second, the indictment does allege one scheme, and it is not necessary for each defendant to be a

participant in every aspect of a scheme so long as he participates in some part of it. Third, the same set of facts and circumstances must be established to support the alleged violations of Cory and Kovens as must be proved against the other defendants. The fact that *additional* facts must be established against the other defendants to support the alleged violations involving Ray's Point and Security Investment is not sufficient reason to hold that there has been misjoinder. Fourth, joinder furthers speed, efficiency and convenience in the functioning of the federal judicial machinery. (Italics in text)

17. 8 Moore's Federal Practice, § 8.04[2] (1965), and Wright, Federal Practice and Procedure, Criminal, § 144 at 328–29 (1969).

discretion to deny a motion for severance when counts are misjoined, and that to do so would be error. But this leaves unresolved the question whether the defendant was harmed thereby. As Judge Friendly has said, "We see no reason why the undoubted truth that an appeal claiming misjoinder under Rule 8(b) raises a question of law in the strict sense, whereas an appeal from denial of severance under Rule 14 normally raises only one of abuse of discretion, should carry exemption from the harmless error rule * * * as a corollary." *United States v. Granello*, 365 F.2d 990, 995 (2d Cir. 1966), cert. denied, 386 U.S. 1019, 87 S.Ct. 1367, 18 L.Ed.2d 458 (1967).

It has been said that "any form of joinder not permitted by the terms of * * * Rule [8] * * * is *conclusively* presumed prejudicial." In our view, however, this statement is too broad if it means that a violation of Rule 8 may never be deemed harmless. When unrelated offenses committed by separate defendants are joined for trial, in violation of Rule 8(b), no further inquiry into special prejudice is required. Such a rule is justified since the introduction at the trial of one defendant of evidence which in law is relevant only to the guilt of another *in itself* is prejudicial, and it would be inappropriate to speculate as to the extent to which that evidence may have affected the deliberations of the jury or embarrassed the defendant in presenting his defense. But in a case where it is clear that "no prejudice from the joinder could have occurred," we perceive no reason for ignoring the harmless error rule. (Italics in text)

We find this decision to be an effective and persuasive answer to the suggestion made by Professor Wright, quoted *supra,* and we accept it.

One commentator would fault the reasoning in *Granello* in its application uniformly of the harmless error rule in this context because of what he characterized as the unique "under-inclusive" nature of the relevant proof of the other offense in certain cases, particularly where that evidence is "adduced to establish a prior crime as proof of such matters as motive or intent." [18] By this awkward adjective "under-inclusive" the author means no more than that, where the evidence under an improperly joined offense in a joint indictment is but a minor or insubstantial part of the overall evidence of the latter offense, the joinder of the two offenses in a single indictment is prejudicial and will not be sustained, after conviction, under the harmless error rule. This, however, is simply a rule which has been consistently recognized and applied in the cases following *Granello* and is inherent in the application of Rule 52. In fact *Granello* limited itself to the situation where all the evidence of the joined separate offense was "substantially" relevant and admissible under the count stating the other offense. It was this circumstance, coupled with the trial court's instructions, which removed any prejudice from the joinder and made Rule 52 applicable. And the Ninth Circuit, a Court which adheres to the rule governing the application of the harmless error rule as declared by Judge Friendly in *Granello,* applied the principle in just this fashion in *United States v. Satterfield,* (9th Cir. 1977) 548 F.2d 1341, 1346, *cert. denied,* 439 U.S. 840, 99 S.Ct. 128, 58 L.Ed.2d 138 (1978), where, while reaffirming what it had said in *Roselli* and *Friedman* and was to repeat later in *Martin,*[19] found that the evidence under the joined separate offense, admissible in the proof of the other offense in the indictment as evidence of "intent or motive" *in that case* was so insubstantial as to be prejudicial and thus not within the harmless error rule.[20] Whether in a partic-

---

**18.** 6 *Hofstra L.Rev.* at 550–51.

**19.** *United States v. Roselli*, 432 F.2d at 899; *United States v. Friedman*, 445 F.2d at 1083; *United States v. Martin*, 567 F.2d at 854.

**20.** The significant language of the Court was (548 F.2d at 1346):

"The evidence put forth to prove an offense for which a defendant is tried will generally be more extensive, and thus more damaging, than that which would be adduced to estab-

ular case the evidence in the joined charge relevant to intent or motive as an admissible fact in the other charge is so insubstantial or "under-inclusive," as measured by all the evidence on the former charge, as to outweigh in prejudice the benefit of a joint trial is, however, not a question that need detain us here, since the evidence of the August incident, taken as a whole, is both relevant and essential to establish the *identity* of a *perpetrator* of the June incident rather than to establish motive or intent. There is no element of the "under-inclusive" involved in this case.

Nor are we inclined to give weight to the authorities which have reached the conclusion that the harmless error rule may never result in the avoidance of a reversal for misjoinder. The authorities to this effect are largely listed in *United States v. Graci,* (3d Cir. 1974) 504 F.2d 411, 413.[21] Reviewing this list, we find that the authoritativeness of many of the earlier decisions has been destroyed or seriously weakened by subsequent decisions of the Court which enunciated them. Thus, *United States v. Gougis,* (7th Cir. 1967) 374 F.2d 758, and *United States v. Spector,* (7th Cir. 1963) 326 F.2d 345, must be read in the light of the comment in the later case of *United States v. Varelli,* (7th Cir. 1969) 407 F.2d 735, 747, that, contrary to the listing in *Graci,* neither *Spector* nor *Gougis* laid "down a *per se* rule requiring separate trials in all cases where joinder of multiple defendants may be improper."[22] As we have seen, the language denying the applicability in this connection of the harmless error rule in *Ingram,* at best is mere dictum so far as the

facts of this case are concerned, and in *Whitehead* is clearly irrelevant to our issue. *Metheany v. United States,* (9th Cir. 1966) 365 F.2d 90, cited in *Graci,* has been superseded by *United States v. Martin,* 567 F.2d 849, *United States v. Friedman,* 445 F.2d 1076, and *United States v. Roselli,* 432 F.2d 879, all establishing a contrary rule in the Ninth Circuit, and *Cupo v. United States,* (D.C. Cir. 1966) 123 U.S.App.D.C. 324, 359 F.2d 990, *cert. denied,* 385 U.S. 1013, 87 S.Ct. 723, 17 L.Ed.2d 549 (1967), similarly cited, is contrary to the rule enunciated in the later cases from the same Circuit of *United States v. Daniels,* 141 U.S.App.D.C. 223, 437 F.2d 656, and *Baker v. United States,* 131 U.S.App.D.C. 7, 401 F.2d 958. *United States v. Roell,* (8th Cir. 1973) 487 F.2d 395, and *Haggard v. United States,* (8th Cir. 1966) 369 F.2d 968, *cert. denied,* 386 U.S. 1023, 87 S.Ct. 1379, 18 L.Ed.2d 461, though suggesting that Rule 52(a) is inapplicable in this connection, have been properly construed as employing a broadened construction of Rule 8 to permit "joinder of what were merely similar offenses with a common participant," which is merely what the harmless error rule of *Granello* does, thereby prompting this thoughtful conclusion by a commentator recently:

> The test set forth in *Haggard* and followed in *Roell* is tantamount to reading rules 8(a) and 8(b) in tandem so long as there is a common participant in each count. As indicated above, the "same evidence" test, applied by the courts finding rule 52(a) applicable to misjoinder, approaches the same result.[23]

lish a prior crime as proof of such matters as motive or intent."

**21.** In *Graci,* the Court while indicating a denial of the applicability of the harmless error rule to a misjoinder under Rule 8(b), was careful to make plain such decision was not necessary to its holding (504 F.2d at 414):

"Thus even if we believed that Rule 52(a) applied, we would still grant a new trial."

**22.** *See* Decker, *Joinder and Severance in Federal Criminal Cases: An Explanation of Judicial Interpretation of the Federal Rules,* 53 *Notre Dame Lawyer* 147, 167 (1977–78).

**23.** 6 *Hofstra L.Rev.* at 560.

The author of this Note summarized the holding in *Haggard* thus:

> Writing for the court [in that case], Judge Lay formalized this [the rule] into the following test: "If the indictment invites "joint proof" . . . or infers a common pattern of action, prima facie joinder is shown." The court thus expanded upon *King* [v. *United States,* 355 F.2d 700, 702–03] by permitting a finding of "series" by implication from merely similar acts linked by a common participant. *Ibid.* at 558–59.

This test of "joint proof" is one which is easily met in this case and one which would make reversal of Seidel's conviction unnecessary.

*Tillman v. United States,* (5th Cir. 1969) 406 F.2d 1930, *vacated on other grounds,* 395 U.S. 830, 89 S.Ct. 2143, 23 L.Ed.2d 742, must be compared with the later case from the same Circuit of *United States v. Gentile,* (5th Cir. 1974) 495 F.2d 626, 630, in which it is stated that "when the facts underlying each offense are so clearly connected that proof of such facts is necessary to establish each offense, joinder of defendants and offenses is proper." *Gentile,* thus, like *Haggard,* reaches the same result as that arrived at under the "same evidence" rule by giving a very broad construction to "series" in Rule 8. These later cases from the Fifth and Eighth Circuits were construed by the author in 6 *Hofstra Law Review* at 563–64 thus:

> "If the Fifth and Eighth Circuits indicate a trend, the circuits refusing to find harmless error in cases of misjoinder may well be approaching the same result by definitional expansion of the joinder rules. Ultimately, the result in both cases is broad permissible joinder. To that extent, the gap between the circuits appears to be narrowing." [24]

*King v. United States,* (1st Cir. 1966) 355 F.2d 700, identified in *Graci* as a leading case requiring an automatic reversal, deserves special mention. The Court in that case concluded that there could be at best no substantial prejudice from a misjoinder if the evidence under one count was admissible in the proof of the other count but said this was not enough to smother the erroneous misjoinder under the harmless error rule. It added to the requirement of a lack of substantial prejudice the necessity of showing benefit to the trial Court itself in justifying the application of the harmless error rule. And it seemed to confine "benefit to the court" to a situation where there was some relationship between the two offenses, such as a charge of burglary joined to a charge of receiving stolen goods which were the fruits of the burglary. 355 F.2d at 704. The benefit to the trial Court in such a situation would appear to rest upon

the avoidance of two trials where there would be substantially similar or connected evidence. If this is the proper construction of the opinion, there is little practical difference between that rule and the one summarized in *United States v. Turbide,* 558 F.2d at 1061, and it certainly is not a rule which would preclude the application of the harmless error rule in this case, where the relationship of the two offenses in June and August has as much connection as the illustration of a charge of burglary and of receiving stolen goods.

█ It is fair to say, as this review of the authorities cited by *Graci* abundantly demonstrates, that the circuits, identified in *Graci* as requiring automatic reversal, either have moved away from such a position or are traveling inescapably in the ultimate direction, either by way of a broadened definition of "series" in Rule 8 or by an application of Rule 52(a), of refusing to order automatic reversal for misjoinder in the absence of prejudice to the complaining defendant. By adopting the rule enunciated in *Granello* and similar cases, we are thus agreeing with the modern view and one which accommodates the purposes of both Rule 8(b) and Rule 52(a), one which "avoid[s] a multiplicity of trials, where these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial," the true purpose of Rule 8(b), as declared in *Bruton v. United States,* 391 U.S. at 131, n. 6, 88 S.Ct. at 1625.

In accordance with the above conclusion, we vacate so much of the earlier panel opinion herein as set aside the conviction of the defendant Seidel and now affirm the conviction of such defendant. We do not disturb the ruling in the earlier panel opinion affirming the conviction of the defendant Kaplan under all counts of the indictment. Pursuant to the ruling, the judgments of conviction of both the defendant Seidel and the defendant Kaplan in the District Court are thus affirmed.

*AFFIRMED.*

---

**24.** The author of the Note deplores the trend. This does not, however, detract from the correctness of his conclusion that the Courts, though on perhaps different grounds, are arriving at the same result.

ORDER

Upon consideration of the petition for rehearing *en banc*;

Now, therefore, with the concurrence and approval of the other members of the panel, and in the absence of a request for a poll of the entire court as provided by Appellate Rule 35(b),

IT IS ORDERED AND ADJUDGED, That the petition for rehearing *en banc* is denied, except for remand to the district court for correction of the sentences of the appellant Alan Jeffrey Seidel, in accordance with our ruling on the improper pyramiding of the sentences of the defendant Marc Kaplan, *United States v. Kaplan*, 588 F.2d 71 at 74–75.