UNITED STATES of America, Appellee,

v.

**Marc KAPLAN, Appellant.**

UNITED STATES of America, Appellee,

v.

**Alan Jeffrey SEIDEL, Appellant.**

**Nos. 77–1381, 77–1382.**

United States Court of Appeals,
Fourth Circuit.

Argued April 6, 1978.
Decided Nov. 30, 1978.

Howard L. Cardin, Baltimore, Md. (H. Russell Smouse, Baltimore, Md., on brief), for appellant in No. 77–1382.

Michael E. Kaminkow, Baltimore, Md., for appellant in No. 77–1381.

Marsha A. Ostrer, Asst. U. S. Atty., Baltimore, Md. (Jervis S. Finney, U. S. Atty., Baltimore, Md., on brief), for appellee in Nos. 77–1381 and 77–1382.

Before HAYNSWORTH, Chief Judge, and LAY * and RUSSELL, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

The appellants-defendants Kaplan and Seidel were indicted for various substantive violations of the National Firearms Act, § 5801, et seq., 26 U.S.C.,[1] as well as unlawful destruction of a vehicle used in interstate transportation. 18 U.S.C. § 844(i). Additionally, Kaplan and one Harris were charged with conspiracy to violate the National Firearms Act, 18 U.S.C. § 371. The indictment arose out of three incidents occurring in the summer of 1976. The first incident related to the making, receiving and possessing of a destructive device known as a pipe bomb by the defendants Kaplan and Seidel in early June, 1976. The two were charged in other counts with, later that month, the making, possession and installation of a pipe bomb in the car of one Dobb, which exploded, seriously injuring the latter. The final incident charged in the indictment involved only Kaplan and Harris. It concerned conspiracy to violate the National Firearms Act in that Harris allegedly agreed to and did introduce Ka-

---

* Donald P. Lay, United States Circuit Judge for the Eighth Circuit, sitting by designation.

1. For a general discussion of the application of the National Firearms Act, see, Annotation 25 A.L.R.Fed. 344.

plan to a Government Agent posing as a "hit man" and thereafter Kaplan allegedly did "unlawfully manufacture a pipe bomb and sell it" to the Government Agent in late August, 1976.

Prior to trial all three defendants moved for severance. The motions of Seidel and Kaplan were denied; the motion of Harris was granted. The separate trial of Harris, in which he was acquitted, followed that of the defendants Kaplan and Seidel. The defendants Kaplan and Seidel were tried and convicted of making, receiving and possessing an illegal firearm under the several counts relating to the two incidents in June, 1976, as well as of destroying an automobile being used in interstate commerce. Kaplan was, also, convicted of conspiracy to violate the National Firearms Act and of making and transferring a pipe bomb in August, 1976. Both appeal their convictions. We affirm in part and reverse in part.

This prosecution arises out of a bizarre love triangle, in which the disappointed lover, according to the prosecution, sought to remove the husband from the scene by murdering him. It began when Lee Dobb and her husband Joseph Dobb were divorced. Following the divorce, a neighbor, the defendant Seidel, moved in with Mrs. Dobb. Joseph Dobb, however, began efforts to effect reconciliation with his former wife. Without the knowledge of Seidel, the erstwhile husband and wife began to see each other, effected a reconciliation, and, much to Seidel's disappointment, remarried. Seidel, according to the prosecution's theory, then began to plan ways in which to kill Dobb. It was charged by the Government that he entered into an arrangement with Kaplan to make a pipe bomb, which, by attachment to Dobb's car, would be effective in killing him. After the two of them had successfully made and exploded an experimental bomb in early June, Kaplan, at the instance of Seidel, according to the prosecution, installed a pipe bomb in Dobb's car. When Dobb attempted to start his car later, the bomb exploded and Dobb was seriously injured and his 1976 Cadillac was destroyed.

After this incident Dobb consulted with Government agents. At first neither Dobb nor the Government agents were able to discover the identity of the person who had planted the pipe bomb in Dobb's car. At this point Harris approached Dobb through a former employee of Dobb's and offered, for a price, to identify the person responsible for the bombing of Dobb's car. He later identified Kaplan. It was obvious, though, that Kaplan had no interest in injuring Dobb and that he must have been induced to take part in the plot by someone else.

An odd plan was developed by Dobb and the Government agents to induce Kaplan to identify the person at whose instance he had installed the bomb in Dobb's car. Under the plan Harris, although himself ignorant of Government involvement, was to introduce a Government agent posing as a "hit-man" to Kaplan. The "hit-man" would seek to acquire from Kaplan a pipe bomb, allegedly for the purpose of fulfilling a "contract" murder. Harris made the necessary introductions and participated to some extent in the discussions with Kaplan. Kaplan agreed to make a pipe bomb for the "hit-man" and explained to the "hit-man" the exact procedure to be used in planting the bomb in an automobile. The next day he delivered the bomb to the "hit-man." Kaplan's arrest followed.

In some way the Government agents had during this same period secured information pointing to Seidel as the probable person who had engaged Kaplan to plant the pipe bomb in Dobb's car earlier. Seidel was in turn arrested on the basis of this information. Kaplan and Seidel were tried together under the indictment stating offenses arising out of all three of the incidents. Both were convicted, as we have said, and they have appealed on a number of separate grounds, only two of which deserve discussion.

Seidel's appeal challenges the District Court's denial of his motion for severance based on his non-involvement in the August incident. The District Court, in denying his motion, stated that "[t]he government concedes and this court recognizes that Seidel

had no involvement in the August incident," but it concluded that, "if Kaplan is to be tried with Seidel on the June incidents, as a matter of logic it makes sense to try the August incident at the same time, given that the August incident was a direct outgrowth of the June incident." It found that Seidel would not be prejudiced by such joint trial despite his non-involvement in the August incident, since "[t]he jury will be cautioned that Seidel is not charged with and did not commit any offenses in August and the fact that offenses may have been committed in August can have no bearing on his guilt in the June events."

■ The determination of the propriety of this ruling of the District Court is controlled by the language of Rule 8(b), Fed.R.Crim.P. That Rule authorizes the joinder of defendants in an indictment only "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." If the indictment consists of several counts, the defendants are properly joined under this Rule only if all arise out of the same act or transaction or series of acts or transactions, and this is true even though all counts may include a common defendant. *United States v. Whitehead* (4th Cir. 1976) 539 F.2d 1023, 1026; *United States v. Parson* (9th Cir. 1971) 452 F.2d 1007, 1008; *Cupo v. United States* (1966) 123 U.S.App.D.C. 324, 359 F.2d 990, 993, *cert. denied* 385 U.S. 1013, 87 S.Ct. 723, 17 L.Ed.2d 549 (1967). The Rule plainly authorized the joinder of Seidel and Kaplan as defendants in the counts relating to the two June incidents. As the District Court said, those two incidents had "a common nexus—the attempted murder of Joseph Dobb." That was sufficient participation to support a joinder of Seidel and Kaplan in connection with those June incidents. *United States v. Kilgore* (4th Cir. 1968) 403 F.2d 627, 628, *cert. denied* 394 U.S. 932, 89 S.Ct. 1204, 22 L.Ed.2d 462 (1969); *United States v. Franks* (6th Cir.

1975) 511 F.2d 25, 29, *cert. denied* 422 U.S. 1042, 95 S.Ct. 2654, 45 L.Ed.2d 693.

■ But there was no such participation by Seidel in the August incident. The manufacture and transfer of a pipe bomb to the "hit-man" was concededly no part of his alleged plan to murder Dobb. The District Court spoke of it, however, as an "outgrowth of the June incident." This is true in the sense that there would have been no criminal investigation if Dobb's car had not been bombed in June. This, however, would not make Seidel a participant in the August investigation. Seidel neither knew of nor participated directly or indirectly in the August offense. Under those circumstances, it was error to include him as a defendant in an indictment covering the August offense. Since his joinder was improper, severance was not a matter of discretion but was mandatory. *McElroy v. United States* (1896) 164 U.S. 76, 81, 17 S.Ct. 31, 41 L.Ed. 355; *Ingram v. United States* (4th Cir. 1959) 272 F.2d 567, 570–571. The District Court accordingly committed error in not granting Seidel's motion for severance.[2] The conviction of Seidel is therefore vacated and the case is remanded to the District Court for a new trial.

■ The defendant Kaplan's primary claim of error is that the District Court improperly imposed consecutive maximum sentences for both the possession and the manufacture counts in connection with both of the June offenses. It seems settled that, while one may be convicted under multiple counts charging the offenses of possession and manufacture of an illegal firearm under the National Firearms Act, the imposition of consecutive maximum sentences after conviction for both the making and possessing of the illegal firearm constitutes an unlawful pyramiding of punishment for a single transaction. This rule was first declared in *United States v. Clements* (9th Cir. 1972) 471 F.2d 1253, 1258, and has been

**2.** The other errors claimed by Seidel are either unnecessary for decision in view of our conclusion that he is entitled to a new trial (*i. e.*, prosecutorial misconduct and invalid sentence) or are without merit (*i. e.*, sufficiency of proof in relation to the early June incident and the testimony of the expert witness).

 

followed in subsequent cases. *United States v. Kalama* (9th Cir. 1977) 549 F.2d 594, 597, *cert. denied* 429 U.S. 1110, 97 S.Ct. 1147, 51 L.Ed.2d 564; *Rollins v. United States* (5th Cir. 1976) 543 F.2d 574, 575; *United States v. Ackerson* (8th Cir. 1974) 502 F.2d 300, 305, *vacated on other grounds* 419 U.S. 1099, 95 S.Ct. 769, 42 L.Ed.2d 796; *United States v. Tankersley* (7th Cir. 1974) 492 F.2d 962, 969. Thus, one convicted of both possessing and manufacturing under the Act may not receive a total sentence exceeding the maximum sentence provided for one violation (*i. e.*, ten years).[3] The cause is remanded to the District Court for correction of sentences as imposed upon the defendant Kaplan. What has been said, however, has no application to the sentence imposed for conviction of transferring in August the illegal firearm in violation of § 5861(e). The offenses of making and transferring an illegal firearm are separate and independent crimes, not incidental to one another, and permit separate sentences. *United States v. Kiliyan* (8th Cir. 1974) 504 F.2d 1153, 1155, *cert. denied* 420 U.S. 949, 95 S.Ct. 1333, 43 L.Ed.2d 428 (1975); *cf., Baugh v. United States* (4th Cir. 1976) 540 F.2d 1245, 1246 (possession and transportation in interstate commerce of stolen money); *contra, United States v. McDaniel* (5th Cir. 1977) 550 F.2d 214, 219.

Finding no merit in the other assignments of error by the two defendants, the conviction of the defendant Seidel is vacated and the case is remanded for a new trial but, except for remand for correction of sentence in accordance with our decision herein, the conviction of the defendant Kaplan on all counts is affirmed.

*No. 77–1382 Reversed as to defendant Seidel and Remanded for New Trial.*

*No. 77–1381 Affirmed as to defendant Kaplan but remanded for correction of sentences.*

3. In *United States v. Ponder* (4th Cir. 1975) 522 F.2d 941, 942, *cert. denied* 423 U.S. 949, 96 S.Ct. 369, 46 L.Ed.2d 285, the total term of imprisonment imposed under two counts charging a violation of the National Firearms Act was five years, which was less than the maximum and thus did not violate the rule stated in *Clements.* Similarly, in *United States v. Gibson* (4th Cir. 1977) 559 F.2d 934, the multiple sentences imposed under § 5861(c) and (d) were to run concurrently and did not exceed the maximum fixed for any one offense under such section and, in *United States v. Wright* (8th Cir. 1978) 581 F.2d 704, the multiple sentences imposed under § 5861 were to run concurrently and did not exceed the maximum fixed for any one offense under such section.