UNITED STATES of America, Appellee,

v.

Prentice C. MILLER, Appellant.

UNITED STATES of America, Appellee,

v.

Carl DIXON, Appellant.

Nos. 80–2014, 80–2019.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 12, 1981.

Decided March 27, 1981.

Anthony S. Troia and James E. Riha, Omaha, Neb., for appellant.

Thomas D. Thalken, Asst. U. S. Atty., Omaha, Neb., for appellee.

Before LAY, Chief Judge, STEPHENSON and ARNOLD, Circuit Judges.

STEPHENSON, Circuit Judge.

Defendants Prentice C. Miller and Carl Dixon appeal their convictions[1] for aiding and abetting Robert Collier in the business of dealing in firearms without a license under 18 U.S.C. §§ 2, 922(a)(1), 924(a). On appeal their principal claim is that certain out-of-court statements made by Collier were improperly admitted under Rule 801(d)(2)(E), Fed.R.Evid. The rule exempts statements by a co-conspirator made during the course and in furtherance of the conspiracy from the general hearsay proscription. We hold that Rule 801 was properly applied and therefore affirm the convictions.[2]

Miller and Dixon were charged in the same indictment but were tried separately. On appeal, their cases were consolidated for argument. Because of the factual overlap and similarity of legal issues presented, we again combined the two cases in this opinion.

## I. BACKGROUND

The evidence in this case was gathered through an undercover investigation by two federal agents in Omaha, Nebraska. Special agents Donnie Carter from the Bureau of Alcohol, Tobacco and Firearms, and Howard Berry from the Department of Agriculture conducted the investigation. Their inquiry eventually centered on Robert Collier. It is statements made by Collier implicating Miller and Dixon which are the crucial issue of this appeal. Some of these statements were covertly recorded by the two government agents.[3]

We summarize the record, keeping in mind that it must be construed in the light most favorable to the government. *Hamling v. United States,* 418 U.S. 87, 124, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590 (1974). Also, we emphasize that part of the record concerning whether there was evidence independent of Collier's out-of-court statements to demonstrate an illegal association between each of the defendants and Collier. *See United States v. Bell,* 573 F.2d 1040 (8th Cir. 1978).

### A. *Prentice C. Miller*

Agents Carter and Berry began their undercover investigation in February 1980. They first made contact with Collier at the

---

1. The Honorable Albert G. Schatz, United States District Judge for the District of Nebraska, presiding. Defendant Miller was sentenced to imprisonment for five years on the aiding and abetting charge as well as a consecutive sentence of two years for possession of a firearm after having been convicted of a felony under 18 U.S.C. App. § 1202(a). Defendant Dixon was sentenced to five years but the court suspended the sentence for all but thirty days and placed Dixon on probation for two years.

2. The trial court instructed the jury that the out-of-court statements made by Collier should be disregarded in considering the illegal posses-

sion charge against defendant Miller. Miller claims receipt of this evidence despite the court's admonition, tainted his conviction on the latter charge. We find no merit in this contention. The evidence of illegal possession of firearms charged in Count XIV was strong and any "taint" was harmless.

3. At both the Miller and Dixon trials, transcripts of the recordings were admitted into evidence and used by the jury when the tapes were played but were not given to the jury for deliberation. Our discussion of the tapes is based upon our examination of the transcripts.

Spotlight Lounge, a night spot in Omaha. Carter represented himself as a "big-time dealer of stolen merchandise." During March and April, Carter purchased about thirty-five weapons from Collier on nine occasions and paid over four thousand dollars.

On March 25, 1980, the two federal agents were at the Spotlight Lounge waiting with Collier for someone to deliver more weapons. Defendant Miller arrived. Collier and Miller talked briefly and then left. Collier returned shortly and sold Carter a nine millimeter Luger pistol for one hundred twenty-five dollars. Collier then told Carter that he could deliver more guns that night. About an hour and a half later, defendant Miller pulled up in front of the Spotlight in an orange Cadillac. Collier left the Spotlight, entered the Cadillac and began talking to Miller. Agents Carter and Berry also left the Spotlight and entered their car which was only fifteen to twenty feet from the Cadillac.

Agent Carter observed Miller and Collier get out of the Cadillac, open the trunk and pull out a long-barrel gun and gun case. Collier brought the guns over to Carter. Carter paid for the weapons. Collier returned to where Miller was standing at the back of the Cadillac and handed Miller some of the funds just received from Carter.

The district court allowed Agent Carter to repeat several statements made by Collier in which Collier stated that he was acquiring weapons from Miller. A tape recording of a conversation between Agent Carter and Collier was also admitted which corroborated this evidence.

## B.  *Carl Dixon*

There are three incidents which the government relies on to show a conspiracy or "illegal association" between Collier and defendant Dixon. The first was on March 11, 1980. Collier directed and accompanied agents Carter and Berry to Dick's Package Liquor in Omaha. Collier entered the store while the two government agents waited in a car across the street. Carter and Berry observed Collier talk to a short, black male

in the store. Shortly thereafter, Collier returned to the car with a .22 caliber "Saturday night special" revolver. Carter paid Collier one hundred twenty dollars—sixty dollars for the Saturday night special and another sixty dollars for an additional .22 caliber weapon Collier was to acquire from the liquor store later. Collier went back into the store and talked to the same person. He returned to the car a second time with another .22 revolver in a paper sack and a shotgun in a box.

The agents and Collier drove into an alley to examine the shotgun and eventually agreed upon a price of one hundred forty dollars for that weapon. Later, after attempting to make another purchase unrelated to this case, the group returned to Dick's Package Liquor to drop off the one hundred forty dollars. Collier entered the store, talked with the same short, black male. When Collier returned he did not have the money.

On April 18, 1980, Carter and Berry returned to Dick's Package Liquor but this time they were not accompanied by Collier. They spoke with the defendant and told him that they were the individuals who had been with Collier and had purchased the guns. Defendant Dixon said, "Oh, yes, I remember you." He added, "I don't have any now, but check back with me." Dixon was similar in size and general appearance to the man who had spoken with Collier earlier. Also, the evidence showed that Dixon was the manager of the liquor store.

On May 8, 1980, Collier and Agent Berry went to the liquor store. Collier told defendant Dixon that Berry wanted to purchase a gun. The defendant said, "I remember you, you're one of the guys that bought some of the other guns." Dixon brought a shotgun from the rear of the store and sold it to Berry. Dixon again told Berry to check back with him later.

The district court admitted tape recordings made of conversations among agents Carter and Berry, and Collier on March 11. These conversations were recorded while the three were in the automobile outside

Dick's Package Liquor store. According to the transcript, Collier referred several times to the male in the store. Collier's comments made it clear that he was selling the weapons on behalf of the person in the store.

## II. ANALYSIS

Rule 801(d)(2)(E) provides that a statement is not hearsay if the statement is offered against a party and is a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy. Fed.R.Evid. In one of this circuit's leading decisions on this issue, the rule has been restated as follows:

> [W]e hold that an out-of-court statement is not hearsay and is admissible if on the independent evidence the district court is satisfied that it is more likely than not that the statement was made during the course and in furtherance of an illegal association to which the declarant and the defendant were parties.

*United States v. Bell, supra,* 573 F.2d at 1044. The *Bell* court noted that the independent evidence need not show beyond a reasonable doubt that the illegal association exists but that the standard is a preponderance of the evidence. *Id.*[4] Both appellants claim that there was not sufficient independent evidence of a conspiracy to allow the introduction of statements made by Collier.

We have little difficulty in finding that there was sufficient independent evidence to show an illegal association in the case of defendant Miller. The evidence strongly linked Miller to Collier in two separate transactions. Particularly the second

sale, where the guns were taken from a car driven by the defendant and where he shared in the proceeds from the sale, clearly demonstrated that Miller and Collier were conspirators.[5]

Defendant Dixon presents a much closer case, however. Dixon asserts his comment that he remembered Carter and Berry does not suggest that he was involved in the illegal sale of firearms. He suggests that he may have merely been aware of the transactions without being involved in any joint venture with Collier. The appellant emphasizes that he was not observed conducting a transaction with Collier at any time nor was it positively shown that he supplied a weapon to Collier or received any money from the sale of weapons through Collier. Dixon argues that the government's evidence was too ambiguous to support the district court's conclusion that the government had shown an illegal association by a preponderance of the evidence. He relies primarily on *United States v. Holder,* 560 F.2d 953, 956–58 (8th Cir. 1977); *United States v. Frol,* 518 F.2d 1134, 1136–37 (8th Cir. 1975); *Glover v. United States,* 306 F.2d 594 (10th Cir. 1962).

However, we are satisfied that the evidence as a whole strongly supports a reasonable inference that Dixon was the man who gave the guns to Collier at the liquor store and apparently received the proceeds from the sale of the shotgun. Dixon was similar in stature and of the same race as the person who spoke with Collier when the agents first visited the liquor store on March 11. The evidence strongly supports the inference that the person in the store and Collier were acting in concert. The

---

4. The *Bell* opinion also sets out a specific procedure for the district courts on this issue. The district court in this case was mindful of the *Bell* guidelines and acted consistent therewith in every respect. The evidence was admitted conditionally upon the prosecution's ability to produce independent evidence of the conspiracy. Near the end of both trials the district court made an express finding that the government established by a preponderance of the independent evidence that the statements in question were made by a co-conspirator or associate of the defendants during and in furtherance of the association or conspiracy.

5. The term conspiracy as used in Rule 801(d)(2)(E) is distinct from the substantive law concept. Thus, it is well established that the crime of conspiracy need not be charged in order to invoke the conspirator exception. *United States v. Scavo,* 593 F.2d 837, 845 n.4 (8th Cir. 1979); *United States v. Gil,* 604 F.2d 546, 548–50 (7th Cir. 1979). The rule may more properly be thought of as a "joint venture" or a "concert of action" exception. *United States v. Gil, supra,* 604 F.2d at 549.

first two times Collier went into the store he spoke to the same person, he returned with weapons and later delivered the proceeds from the sale to someone in the store. Also, we believe that this situation is distinguishable from *Holder, Frol* and *Glover* because the defendant's own statements to agents Carter and Berry demonstrated that Dixon was the person with whom Collier dealt in the liquor store on March 11. The fact that Dixon was the manager of the store supports this conclusion. Further, Dixon's statements did more than refer back to the March 11 transaction. By encouraging the undercover agents to "check back with me," Dixon indicated that he was involved in an on-going scheme to sell weapons. We hold that these facts, although presenting a close question, were sufficient to satisfy the independent evidence test of Rule 801(d)(2)(E) and *Bell*.

### III. OTHER ISSUES

Appellant Dixon raises several other issues. He claims that the evidence was insufficient to create a jury question, that the evidence was insufficient to show specific intent and knowledge and that Collier was not demonstrated to be a dealer within the terms of 18 U.S.C. § 922(a)(1). We disagree.

 The evidence we have discussed plus the recorded statements of Collier were sufficient to create a jury question. Secondly, specific intent or knowledge of the defendant that he is violating the law is not an essential element of the crime of unlawful firearms dealing under section 922(a)(1). *United States v. Powell*, 513 F.2d 1249, 1251 (8th Cir. 1975). Thus, specific intent did not need to be shown in a prosecution charging aiding and abetting. *United States v. Burkhalter*, 583 F.2d 389, 391–92 (8th Cir. 1978); *United States v. Bell, supra*, 573 F.2d at 1046. It is sufficient that the defendant knew that he was aiding and abetting the sales of shotguns and a "Saturday night special." Participating in the sale of such items should alert one to a likelihood of illegality. *See United States v. Burkhalter, supra*, 583 F.2d at 391.

Dixon's claim that Collier was not a dealer is likewise without merit. The record demonstrates that Collier guided the two undercover agents through more than thirty firearms transactions over a two month period. Collier actually made the sales in some cases and assisted in others. This is sufficient to show that Collier was a dealer.

Finally, Dixon claims that the court's instructions were confusing and misleading. The instructions given in this case were not in any way unusual. Our reading of the instructions as a whole indicates that any claim of confusion or prejudice is groundless.

Affirmed.