**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Gerald S. HURD, Defendant-Appellant.**

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Howard H. SMITH, Defendant-Appellant.**

**Nos. 80-1073, 80-1083.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 8, 1981.

Decided March 23, 1981.

Rehearing and Rehearing En Banc
Denied May 12, 1981.

Douglas D. McBroom, Seattle, Wash., argued, for defendant-appellant.

Peter Mueller, Asst. U. S. Atty., Seattle, Wash., for plaintiff-appellee.

Before PREGERSON and POOLE, Circuit Judges, and KARLTON,* District Judge.

POOLE, Circuit Judge:

Hurd and Smith were convicted in the Western District of Washington on all charges arising from a four count indictment. Count I of that indictment charged both defendants with conspiracy to receive, possess and transfer unregistered firearms in violation of 18 U.S.C. § 371. Count II charged Smith with aiding and abetting the unlawful transfer by Olson, an unindicted coconspirator, of a rifle and silencers, a violation of 18 U.S.C. § 2, 26 U.S.C. § 5961(e). Count III charged Hurd with unlawful possession of a silencer, a violation of 26 U.S.C. § 5861(d). Count IV charged Hurd with unlawfully transferring a silencer, a violation of 26 U.S.C. § 5861(e).

Defendants urge that their convictions must be reversed, asserting three grounds. Both Hurd and Smith contend that the district court improperly instructed the jury by refusing to supply an instruction on the definition of a silencer that encompassed the defense theory of the case. Smith claims that his conviction for aiding and abetting Olson's transfer of a rifle and silencers must be reversed because Olson never transferred the firearms within the meaning of the statute. Finally, Hurd argues that the trial judge should have ordered an examination of certain tape recordings introduced by the government at trial for evidence of tampering.

We reverse Smith's conviction for aiding and abetting, Count II of the indictment, and affirm in all other respects.

## I.

Gerald Hurd is a resident of Washington and Howard Smith a resident of Idaho. In May 1979, Hurd visited Smith in Idaho and returned home with a device which Smith had manufactured and which the government alleged was a silencer. Hurd showed the device to Olson, an acquaintance from Hurd's earlier days in federal prison, and Olson indicated that he believed there was a market for the devices. After Hurd made the arrangements, Olson went to Idaho, visited Smith and was given two of the silencers and a rifle. Olson told Smith that he would demonstrate the devices to friends in Idaho and Montana and attempt to sell them for $1,000 each.

Olson left Idaho and went to Hurd's home in Washington. With Hurd's permission, Olson left the firearms in Hurd's garage for safekeeping. He then contacted agents of the Treasury's Bureau of Alcohol, Tobacco and Firearms (ATF) and described his dealings with Hurd and Smith. Olson cooperated with Treasury agents by participating in taped telephone conversations and meetings with Hurd and Smith and arranged for an agent to buy silencers from the defendants. Olson also returned to Hurd's home, retrieved the firearms that had been stored there, and delivered them to the ATF.

## II.

Defendants contend that the trial court failed to adequately instruct the jury on their theory of the case when it declined to give a proffered defense instruction on the definition of a silencer.[1] We find this claim to be without merit.

While the trial court must instruct the jury on the defendants' theory of the case, the judge retains substantial discretion to select the particular instructions

---

* Honorable Lawrence K. Karlton, United States District Judge, Eastern District of California, sitting by designation.

1. The proposed defense instruction on the definition of a silencer, which the district court declined to use, provided:

The term silencer does not apply to a device which has a primary function of muffling a flash, improving the aim, or reducing the kick of a discharging firearm but which also has an incidental effect of reducing the noise from such discharge.

that will be given. *See United States v. Kaplan*, 554 F.2d 958, 968 (9th Cir. 1977) (per curiam). It is not error to refuse a proposed instruction so long as the instructions given, viewed in their entirety, encompass defense theory for which there is record support. *United States v. Kenny*, 645 F.2d 1323 (9th Cir. 1981); *United States v. Hughes*, 626 F.2d 619, 627 (9th Cir. 1980); *United States v. James*, 576 F.2d 223, 226–27 (9th Cir. 1978).

In this case, the district judge instructed the jury that a silencer:

> means a device one of the primary functions of which is to reduce the noise occasioned by the discharge of any portable weapon such as a rifle, carbine, pistol, revolver, or any other device to which it is attached and from which a bullet or projectile may be discharged by an explosive.

Defendants argued that the devices manufactured by Smith were not silencers because noise reduction was merely an incidental function and that the primary purpose of the devices was to stabilize the barrel, reduce recoil and eliminate the flash caused by firing. If the jury had agreed with the defendants that noise reduction was an incidental function of the devices, the court's instruction clearly required them to find that the devices were not silencers because noise reduction would not have been a primary function. Thus, the court's instructions adequately covered the defense case.

### III.

Smith contends that his conviction for aiding and abetting Olson's transfer of firearms must be reversed because Olson never transferred the weapons within the meaning of 26 U.S.C. § 5845(j).

■ For Smith to be convicted of aiding and abetting, Olson must have committed the underlying crime which Smith is claimed to have aided and abetted. *See, e. g., United States v. Oscar*, 496 F.2d 492, 493 (9th Cir. 1974). Olson's underlying crime in this case is said to be the unlawful transfer of firearms without payment of the transfer tax or registration with the Secretary of the Treasury, 26 U.S.C. § 5861(e). An essential element of that offense is that a transfer occur within the meaning of § 5845(j). A transfer:

> and the various derivatives of such word, shall include selling, assigning, pledging, leasing, loaning, giving away, or otherwise disposing of.

26 U.S.C. § 5845(j).

■ The government contends that by leaving the rifle and silencers in Hurd's garage, Olson transferred them within the meaning of this statutory definition. We disagree. The record shows that Olson asked Hurd to keep the firearms. Hurd agreed and together they hid the weapons in Hurd's garage. Olson later returned, picked up the weapons and delivered them to Treasury agents. Standing alone, these actions cannot be defined in one of the terms outlined in the statute.

Each of the statutory categories includes an element whereby the alleged transferor surrenders control or dominion over the weapons. In this case, Olson briefly left the weapons in storage in Hurd's garage. This transaction in no sense contemplated any dominion or control by Hurd. Although Olson put the weapons physically out of his possession, they always remained his property. Nor did Hurd use them, treat them as his own, or take any action with them inconsistent with Olson's storage instructions. We cannot agree that Congress intended to impose a transfer tax and require registration whenever mere physical possession of a firearm is surrendered for a brief period.[2] That is all we have in this case.

---

2. *Von Eichelberger v. United States*, 252 F.2d 184 (9th Cir. 1958), is not to the contrary. In that case, this circuit held that transfer of possession of weapons under the terms of a conditional sales contract constituted a transfer within the meaning of the predecessor to § 5845(j). *Id.* at 185. Thus the court in *Von Eichelberger* dealt with something more than the naked, transitory surrender of possession which is present in this case. We agree with

■ Alternatively, the government suggests that a transfer occurred when Olson delivered the arms to the Treasury agents. We do not treat seriously the contention that Congress intended the voluntary surrender of firearms to government agents by one cooperating in a criminal investigation to be a transfer requiring registration with the Secretary and payment of a transfer tax.

■ As Olson did not within the meaning of the statute, transfer the weapons to Hurd by leaving them in Hurd's garage, Olson did not commit the underlying crime supporting Smith's conviction for aiding and abetting. Smith's conviction for aiding and abetting must therefore be reversed.[3]

### IV.

Defendant Hurd challenges the authenticity of tape recordings introduced by the government at trial. Against the advice of his attorney, Hurd objected to admission of taped conversations between himself and Olson. The district judge initially indicated that he would order the tapes examined by an expert if the defendants were convicted. At sentencing, the court declined to order an examination, found that no tampering had occurred, that none was in fact indicated, and that, even if there were some omissions—suggesting erasure—the alterations Hurd alleged had no bearing on the outcome of the case.

■ It is within the discretion of the trial court to admit taped conversations. *See United States v. Kenny, supra,* at 1342; *United States v. Lane,* 514 F.2d 22, 27 (9th Cir. 1975). Even if part of the tape is inaudible or missing, it is admissible if the trial judge believes that it has probative value. *See United States v. Kenny, supra,* at 1342; *Byrnes v. United States,* 327 F.2d 825, 836 (9th Cir. 1964); *see also United*

*States v. Haldeman,* 559 F.2d 31, 109 (D.C. Cir.1976) (per curiam).

■ Hurd does not contest the accuracy of those taped conversations heard by the jury. No objection is made to the adequacy of the foundation permitting the government to introduce the tapes. Rather, Hurd claims that the tapes must have been altered because one of several taped conversations did not include Hurd's admonition to Olson to stop shoplifting and Olson's statement that he would not "go against his people" or hurt Hurd.

The district court did not err in declining to have the tapes examined by an expert. The court found that the tapes had not been altered, relying on detailed testimony by government agents handling the tapes. That finding will be reversed only if clearly erroneous. *See United States v. Hart,* 546 F.2d 798, 801–02 (9th Cir. 1976) (en banc). We cannot say that the district court erred in discounting Hurd's allegation of tampering and the finding that there was no tampering is not clearly erroneous.

The court also correctly found that any matters missing from the tape were irrelevant to the outcome of the case. Olson's comment, that he would not "go against his people," is neutral on its face. Indeed it may be incriminating if one finds, as the jury did here, that Olson and Hurd were engaged in a criminal conspiracy. Similarly, Hurd's disapproval of shoplifting has no relevance to any issue in this case and bears only incidentally on his character.

■ On this record, the district court properly declined to require an expert examination of the tapes. A defendant's unsupported allegation that the government has tampered with evidence does not automatically require an expert investigation. Such an investigation is certainly not required when, as here, defendant can point

*Von Eichelberger* that the term "transfer" is to be broadly and liberally applied when examining particular cases. *Id.* at 185–86. However, even principles of liberal statutory construction do not permit us to reach out and characterize the transaction in this case as a transfer.

3. Smith also argues that there was insufficient evidence to support his conviction for aiding and abetting. In light of the absence of a transfer, we express no opinion on this claim.

only to wholly irrelevant matters allegedly missing from the tapes. The tapes were relevant, properly authenticated and admissible.

## V.

Smith's conviction for aiding and abetting the unlawful transfer of firearms is reversed. In all other respects, the judgments of conviction are affirmed.

AFFIRMED IN PART, REVERSED IN PART.