**UNITED STATES of America, Appellee,**

v.

**David R. KIEFER, Appellant.**

**No. 82–1305.**

United States Court of Appeals, Eighth Circuit.

Submitted July 14, 1982.

Decided Dec. 8, 1982.

Rehearing Denied Feb. 28, 1983.

Thomas E. Dittmeier, U.S. Atty., Edward L. Dowd, Jr., Asst. U.S. Atty., St. Louis, Mo., for appellee.

Douglas A. Copeland, Clayton, Mo., for appellant.

Before LAY, Chief Judge, and HEANEY and McMILLIAN, Circuit Judges.

HEANEY, Circuit Judge.

David R. Kiefer appeals from his jury convictions for five violations of the National Firearms Act, 26 U.S.C. §§ 5801 *et seq.* Kiefer had been indicted on four counts of transferring machine guns in violation of 26 U.S.C. §§ 5812, 5861 and 5871, and one count of making a machine gun in violation of 26 U.S.C. §§ 5822, 5861 and 5871. On appeal, he contends that the district court[1] erred in admitting into evidence certain out-of-court statements under the coconspirator exception to the hearsay rule, Fed.R.Evid. 801(d)(2)(E), and that there was not sufficient evidence to convict him on Counts III, IV and V. We affirm Kiefer's conviction on Counts I, II and III, but reverse the judgment against him on Counts IV and V.

## I.

### BACKGROUND

The evidence presented by the government against Kiefer was gathered through an undercover investigation by Special Agents Dennis Becker and Thomas Doyle of the Bureau of Alcohol, Tobacco and Firearms (AT & F) in St. Louis, Missouri. Their investigation centered on the activities of Kiefer and Michael Stewart, then the owner of a gun shop in Imperial, Missouri.

On August 5, 1980, Kiefer and Agent Becker met and discussed the sale of machine guns. On September 9, 1980, after several more meetings and telephone conversations, Kiefer sold Agent Becker a semi-automatic 9mm. RPB Industries Model M–10 (MAC–10) firearm, which had been converted into a fully automatic machine gun. Shortly thereafter, Kiefer sold another altered MAC–10 machine gun to Agent Becker in the presence of Agent Doyle. These activities form the basis for the two illegal transfers of firearms charged in Counts I and II of the indictment.

On November 10, 1980, Kiefer and the agents, at Kiefer's direction, drove to M–G Arms, Stewart's gun shop. Although the shop was closed, Kiefer informed the agents that he had purchased from Stewart the two previously transferred MAC–10s and had paid him $100 to convert the weapons into fully automatic machine guns.

The agents and Kiefer met several more times in January and February, 1981, to discuss machine gun purchases. Kiefer testified that he told the agents that he could obtain more guns through Stewart. He also admitted calling Stewart to arrange for Stewart and the agents to deal directly with each other. On February 21, 1981,

---

1. The Honorable Edward L. Filippine, United States District Judge for the Eastern District of Missouri.

Kiefer met the agents and Stewart at M–G Arms. At that time, Agent Doyle paid Stewart $337 for the delivery of a third altered MAC–10 machine gun. Kiefer and the agents returned to the shop to pick up the gun on March 13, 1981. With Stewart's assistance, and in the presence of the agents, Kiefer altered the semiautomatic MAC–10 to fire automatically. At the same time, Agent Doyle completed a federal firearms registration form, listing himself as transferee, Stewart as transferor, and the MAC–10 as a semiautomatic weapon. After the weapon had been altered, the group field-tested it behind Stewart's house to ensure that it fired automatically. These activities form the basis of Counts III and IV of the indictment.

On April 8, 1981, Agent Doyle went alone to Stewart's gun shop. He placed an order for a fourth altered MAC–10 machine gun and gave Stewart $347. Doyle testified that he told Stewart "that I want to do the same kind of deal we had on March 13th, that I was going to bring Dave [Kiefer] back with me and that we were going to do the conversion there, and I also mentioned test-firing it there again." Stewart agreed. On May 21, 1981, Agent Doyle picked up Kiefer and drove him to the gun shop. As on the previous occasion, a firearms registration form was completed listing Stewart as the transferor and the MAC–10 as a semiautomatic weapon. Kiefer again began converting the gun into a machine gun. Before that process was complete, Stewart asked Kiefer and Agent Doyle to leave because he was expecting an AT & F representative to come by the shop to examine his records. Agent Doyle drove Kiefer back home to north St. Louis County, where Kiefer completed the conversion of the MAC–10. Agent Doyle retained possession of the gun. These activities form the basis of Count V, the fourth transfer of firearms charged in the indictment.

At trial, Kiefer admitted that he made the transfers on September 9 and September 24, 1980, that were the subject of Counts I and II. The jury convicted Kiefer on all five counts, and the district court entered judgment against him. Kiefer now appeals.

## II.

## DISCUSSION

### A. *Admission of Coconspirator's Statements.*

Kiefer first contends that the district court erred in concluding that the statements of Michael Stewart were admissible evidence under the coconspirator exception to the hearsay rule. Kiefer argues that the record does not show that he conspired with Stewart to illegally make and transfer machine guns, and thus Stewart's out-of-court statements were inadmissible hearsay. We disagree.

Out-of-court statements by a coconspirator are admissible if the government demonstrates to the trial judge by a preponderance of independent evidence that a conspiracy existed, that the defendant and the declarant were members of the conspiracy, and that the declarations were made during the course and in furtherance of the conspiracy.[2] *United States v. Bell,* 573 F.2d 1040, 1043–1044 (8th Cir.1978); Fed.R.Evid. 801(d)(2)(E). Proof of the first element of the *Bell* criteria, the existence of a conspiracy, requires a showing of a "likelihood of illicit association between the declarant and the defendant." *United States v. Scholle,* 553 F.2d 1109, 1117 (8th Cir. 1977). Independent evidence of the illicit association "may be completely circumstantial, or may consist of the conspirators' own conduct and *admissions." Id.* (citations omitted, emphasis added).

---

2. The government did not formally indict Kiefer on a conspiracy charge. Nonetheless, it is established that a defendant need not be charged with the crime of conspiracy to invoke the coconspirator exception. *United States v. Miller,* 644 F.2d 1241, 1244 n. 5 (8th Cir.), *cert.* denied, 454 U.S. 850, 102 S.Ct. 289, 70 L.Ed.2d 140 (1981); *United States v. Scavo,* 593 F.2d 837, 845 n. 4 (8th Cir.1979). *See* 4 J. Weinstein and M. Berger, Weinstein's Evidence ¶ 801(d)(2)(E)[01] (1971).

On the basis of Kiefer's admissions at trial, we must sustain the district court's finding that a conspiracy existed between Kiefer and Stewart, and affirm its decision to admit Stewart's statements as those of a coconspirator. Kiefer testified that prior to March 13, 1981, he told the agents that more machine guns could be obtained through Stewart, and he admitted calling Stewart and asking him to order a MAC–10 for Agent Doyle. Kiefer testified further that on March 13, he and Stewart successfully altered the MAC–10 at Stewart's shop, and that the gun successfully test-fired as a machine gun behind Stewart's house. He also stated that he began converting the fourth MAC–10 obtained from Stewart into a machine gun at M–G Arms on May 21, 1981, that Stewart had asked Agent Doyle and him to leave with the gun, and that he was later successful in making the weapon into an automatic weapon. These admissions are sufficient to indicate the likelihood of an illicit association or conspiracy between Stewart and Kiefer, the apparent purpose of which was to misrepresent the illegal sale of machine guns as legal sales of semiautomatic weapons. *See United States v. Miller,* 644 F.2d 1241, 1244–1245 (8th Cir.), *cert. denied,* 454 U.S. 850, 102 S.Ct. 289, 70 L.Ed.2d 140 (1981); *United States v. Scholle, supra,* 553 F.2d at 1117. Accordingly, the district court properly allowed the jury to consider extrajudicial statements made by Kiefer's coconspirator that were clearly made during and in furtherance of that conspiracy.

Kiefer, relying on *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), next argues that the admission of Stewart's statements denied him his Sixth Amendment right to confront the witness against him. The *Bruton* case, however, involved out-of-court statements by a codefendant that amounted to direct admissions of the defendant's guilt. *Id.* at 135–136, 88 S.Ct. at 1627–1628. Kiefer concedes that no such direct admissions were made here.

The confrontation clause and the hearsay rule, of course, are not always coex-

tensive. *See Dutton v. Evans,* 400 U.S. 74, 80–82, 91 S.Ct. 210, 215–16, 27 L.Ed.2d 213 (1970). Nonetheless, declarations admitted in conformity with the coconspirator rule generally do not violate a defendant's confrontation right, absent some unusual circumstance. *E.g., United States v. Nelson,* 603 F.2d 42, 46 (8th Cir.1979). Kiefer has pointed to no such unusual circumstances here, and the context of Stewart's out-of-court statements and the persons to whom he made them suggest that they were reliable evidence. Kiefer failed to show that Stewart had a motive for lying, or that Stewart had problems with his memory, perception or expression. Since the hearsay testimony in question thus possessed traditional indicia of reliability and the jury was afforded an adequate basis for evaluating its truthfulness, Kiefer's Sixth Amendment rights were not violated. *See id.* at 47. *See also Mancusi v. Stubbs,* 408 U.S. 204, 213, 92 S.Ct. 2308, 2313, 33 L.Ed.2d 293 (1972); *United States v. Goins,* 593 F.2d 88, 92 (8th Cir.), *cert. denied,* 444 U.S. 827, 100 S.Ct. 52, 62 L.Ed.2d 35 (1979); *United States v. Scholle, supra,* 553 F.2d at 1119–1120.

**B.** *Sufficiency of the Evidence—Counts III, IV and V.*

Kiefer finally argues that the evidence is insufficient to support his convictions for making and transferring the machine gun received by the agents on March 13, 1981 (Counts III and IV) because there was no evidence that he made any of the arrangements for the purchase of that firearm or that he was paid anything for his participation in that transaction. In addition, he argues that there is insufficient evidence to support his conviction for transferring the MAC–10 machine gun on May 21, 1981 (Count V) because he was not present at the time that the firearm was ordered and paid for, he made none of the arrangements regarding the sale of that weapon, and he was not paid any money in connection with its purchase or conversion.

The government's position is that the evidence, when viewed in the light most favor-

able to the verdict, supports Kiefer's conviction on all counts. It argues that Kiefer effectively admitted that he transferred all four firearms to the agents and that he assisted in making all four weapons into machine guns. In the government's view, Kiefer's admissions alone are sufficient to prove him guilty beyond all doubt, even though Kiefer was not paid for making or transferring the last two weapons.

■ We agree that the evidence is sufficient to support Kiefer's conviction on Count III for making the machine gun received by the agents on March 13. The Firearms Act defines the term "making" as "putting together, altering, any combination of these, or otherwise producing a firearm." 26 U.S.C. § 5845(i). Kiefer admitted at trial that he worked on the weapon with Stewart, adding and altering parts in order to change it into a machine gun. *See supra*, at 1111–1112. He thus violated the Act whether or not he was paid for working on the gun, because such payment is not an element of the crime. 26 U.S.C. § 5845(i).

Kiefer's claim of insufficient evidence as to Counts IV and V is a different matter, however. The government suggests that Kiefer admitted that he transferred the firearms in question when he testified that (1) he had made the arrangements prior to March 13 for Stewart to deal directly with the agents, and (2) he had possession of the fourth MAC-10 when he left the gun shop with Agent Doyle on May 21. The issue as to these counts is whether Kiefer's actions were those of a transferor for purposes of the Firearms Act. We think not.

■ Under the Firearms Act, the transfer of a weapon is unlawful if the transfer tax is not paid, an application is not filed, or the application fails to include

all required information. 26 U.S.C. §§ 5811, 5812, 5861(e). In addition, the government must necessarily prove that a "transfer" occurred within the meaning of the Act. *Id.* The term "transfer" is defined as "selling, assigning, pledging, leasing, loaning, giving away, or otherwise disposing of" a weapon illegally. 26 U.S.C. § 5845(j). This definition establishes that "[e]ach of the statutory categories includes an element whereby the alleged transferor surrenders control or dominion over the weapons." *United States v. Hurd,* 642 F.2d 1179, 1182 (9th Cir.1982). The plain implication is that a transferor is one controlling the ultimate disposition of the weapons, not a person without such control performing the simple act of physically handing the guns to another. Moreover, Congress, by requiring payment of a tax and registration of the transfer, clearly intended to require that a transferor have more of a proprietary interest in the weapon than just the mere transitory physical possession of it. *Id.*

Here, Stewart, as the seller of the machine guns that are the subject of Counts IV and V against Kiefer, unquestionably had control over their disposition and was a transferor within the meaning of the Firearms Act. In fact, he pled guilty to illegally transferring those weapons on March 13 and May 21, 1981, to the AT & F agents.

■ Kiefer, on the other hand, had no control over Stewart's machine guns or their disposition. He did not treat them as his own, or take any action that was contrary to Stewart's instructions. When Kiefer actually handled the weapons, it was either in Stewart's presence or at his behest. Kiefer did not share in any way in the proceeds of the March 13 and May 21, 1981, sales to Agents Becker and Doyle.[3] The fact is that Kiefer exercised no control

---

**3.** The government's assertion that it was irrelevant that Kiefer received no money for his part in the transactions is not persuasive here. In situations where the weapon in question is transferred by "loaning, giving away, or otherwise disposing of" it, 26 U.S.C. § 5845(j), the fact that the alleged transferor receives no payment is indeed irrelevant. But Counts IV and V here involve two *sales* constituting transfers,

and any receipt of consideration by Kiefer could have been regarded as evidence of his proprietary interest in the transfers. The government's failure to establish that Kiefer earned any money from the sales transactions thus suggests that he had no dominion or control over the weapons and that he was not a transferor under the statute.

over the disposition of the weapons in Counts IV and V. He simply handed the weapons from Stewart to Agents Becker and Doyle.

Accordingly, although we have viewed the evidence in the light most favorable to the government, *Hamling v. United States,* 418 U.S. 87, 124, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590 (1974), we cannot find sufficient evidence in the record to conclude that Kiefer transferred the weapons in Counts IV and V within the meaning of the Firearms Act. His convictions on those two counts consequently must be reversed.[4]

### III.
### CONCLUSION

We hold, therefore, that the district court properly applied the coconspirator exception to the hearsay rule, Fed.R.Evid. 801(d)(2)(E), and that there was sufficient evidence to support Kiefer's convictions on Counts I, II and III of the indictment. His convictions on Counts IV and V, however, are reversed because of insufficient evidence to support them.

Affirmed in part, reversed in part.

---

4. Our holding is a narrow one. We do not intend to preclude the possibility that, in an appropriate case, joint transferors could be found guilty under the statute. *Cf. United States v. White,* 368 F.Supp. 470 (N.D.Ind. 1973), *aff'd,* 498 F.2d 1404 (7th Cir.1974) (defendants found guilty of joint possession of an unregistered firearm).