**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**John P. BOGDEN,**
**Defendant–Appellant.**

**No. 88–1594.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 4, 1988.

Decided Dec. 30, 1988.

Wayne R. Golomb, Springfield, Ill., for defendant-appellant.

Hilary W. Frooman, Asst. U.S. Atty., J. William Roberts, U.S. Atty., Springfield, Ill., for plaintiff-appellee.

Before CUDAHY, COFFEY and MANION, Circuit Judges.

COFFEY, Circuit Judge.

John P. Bogden appeals his convictions for possessing, transferring and making a "sawed-off shotgun" in violation of the National Firearms Act, 26 U.S.C. §§ 5861(d), (e) and (f).[1] Bogden was found guilty following a bench trial and was sentenced to 5 years imprisonment on the charge of illegally making the shotgun (Count I), 5 years imprisonment on the charge of possession of the gun (Count II), to run concurrent to the term of imprisonment on Count I, and 5 years probation on the charge of illegal transfer of the gun (Count III), the probation to run consecutive to the sentences imposed on Counts I and II. Bogden challenges the sufficiency of the evidence and the legality of the sentences imposed. We affirm.

I

In April of 1986, Brett Final, an undercover agent for the Bureau of Alcohol, Tobacco and Firearms (ATF) was introduced to defendant Bogden by an informant, James Highland, who suggested that Bogden might be a source for the purchase of a variety of illegal firearms. On April 4, Agent Final and Highland went to Bogden's house to arrange a purchase. Bogden and Final agreed that Final would buy a .20 gauge sawed-off shotgun from Bogden for $65.[2] Agent Final and Highland returned to Bogden's house the next day to finalize the gun transaction. Bogden informed Final that he could get him a .20 gauge shotgun for $50 to $65 and that if the barrel was too long for Final or if he wanted the stock cut off, Bogden would perform that service for him. The three men agreed to meet again later that evening. When Final and Highland returned that evening, they found Bogden standing in his garage holding a shotgun that was sawed-off but obviously still of legal length. Before Final could say anything about the gun, Bogden stated that it could be made shorter. After repeated reassurances from Bogden that he would saw off the barrel and the stock, Final agreed to purchase the gun.

At that point, Bogden told Final that the gun belonged to someone else and that the three men would have to go to the owner's premises to pay for the gun and return a recoil pad on the gun. Bogden, Final and Highland then drove to the owner's premises. Outside the building, Final gave Bogden $65 in cash and Bogden entered the premises to pay the owner and return the recoil pad. In fact, the owner of the gun was a registered firearms dealer.

---

1. The gun in question met the statutory definition of a "firearm" in that it was a shotgun modified to have an overall length of less than 26 inches and a barrel of less than 18 inches in length. 26 U.S.C. § 5845(a)(2).

2. Final recorded the substance of this and all later conversations he had with Bogden using a microphone and recorder concealed on his body.

Bogden purchased the gun from the dealer and filled out all of the necessary paperwork to comply with state and federal laws regarding the transfer of firearms. In those forms, Bogden listed himself as purchaser and signed his name. Bogden, Final and Highland then returned to Bogden's house where Bogden disassembled the gun, sawed off part of the barrel and directed Highland to saw off the butt of the gun. Bogden reassembled the gun, test-fired it, wiped his fingerprints off, and handed the gun (now illegal)[3] to Agent Final. Bogden told Final to file the serial number off the gun before transferring it to anyone else. On September 3, 1987, Bogden was indicted on three counts charging him with illegally making a sawed-off shotgun in violation of 26 U.S.C. § 5861(f), illegally possessing a sawed-off shotgun in violation of 26 U.S.C. § 5861(d), and illegally transferring a sawed-off shotgun in violation of 26 U.S.C. § 5861(e).

## II

### A. *Sufficiency of the Evidence*

This court must review all the evidence and all reasonable inferences that can be drawn from the evidence in the light most favorable to the government when addressing a defendant's challenge to the sufficiency of the evidence. *United States v. Pritchard*, 745 F.2d 1112, 1122 (7th Cir. 1984). Bogden challenges his conviction contending that the government's evidence was insufficient to support the possession and transfer of an illegal firearm. He argues that because he structured the sale and transfer transaction in such a way that Agent Final paid for the sawed-off shotgun before it was cut down to an illegal length, he cannot be found guilty of either transferring or possessing an illegal firearm. He reasons that because Agent Final had already paid for the gun, he (Bogden) no longer "owned" the gun when it was cut

down. Further, he posits that since he did not "own" the gun, he could no longer "possess" the gun within the meaning of the Act. Finally, he argues that since he could no longer possess the gun, he was not capable of transferring it, either. Bogden's argument rests on his assertion that Agent Final "owned" the shotgun when it was ultimately made illegal.

■■■ His argument fails because the statute criminalizes possession and/or transfer of illegal firearms; it does not make ownership interest in the firearm an element of either crime. As the government points out, Bogden wrongly assumes that possession is *equivalent* to ownership. Although the Act does not define possession, we have upheld a jury instruction explaining that a person has actual possession of an object if he "knowingly has direct physical control over a thing at a given time." *United States v. Stockheimer*, 807 F.2d 610, 615 (7th Cir.1986), *cert. denied*, 481 U.S. 1018, 107 S.Ct. 1899, 95 L.Ed.2d 506 (1987). Clearly, one can "knowingly have direct physical control" over an object without owning it. Just as clearly, Bogden knowingly had direct physical control over the shotgun when he personally disassembled it, took a saw to it, sawed off its barrel, reassembled it, test-fired it, and wiped his fingerprints off before handing it to Agent Final. Moreover, one court has held that where a person makes an illegal firearm, "possession is always incidental to making by the person who is the maker." *United States v. Clements*, 471 F.2d 1253, 1254 (9th Cir. 1972). Bogden does not seriously contest the validity of his conviction for making an illegal weapon; there is no doubt that the alterations Bogden performed met the Act's definition of "making" an illegal firearm. *See* 26 U.S.C. § 5845(i); *United States v. Kiefer*, 694 F.2d 1109, 1114 (8th

3. Bogden claims that the government failed to prove that the gun was of an illegal length. A review of the trial transcript reveals, however, that the shotgun was identified and admitted in evidence during Agent Final's testimony. Final also testified he had measured the gun and that its overall length was 19-¾″ with a barrel

length of 11-⅞″. Such measurement testimony was sufficient to establish the length of the gun. *United States v. Crowell*, 559 F.2d 1084, 1085 (7th Cir.1977). The statutory definition of an illegal shotgun is one with an overall length of less than 26 inches and a barrel length of less than 18 inches. 26 U.S.C. § 5845(a)(2).

Cir.1982).[4] Nonetheless, we need not decide whether a charge of making an illegal firearm will *always* support a charge of possession of the same; we hold that the acts performed by Bogden with respect to the shotgun in this case were sufficient to support his convictions for the possession and the manufacture of an illegal firearm.

Next, Bogden argues that after Final had paid for the shotgun, Bogden did not have a sufficient proprietary interest in the gun to have transferred it (once it was sawed-off further and of illegal length) within the meaning of the Act.[5] In support of this contention, Bogden cites *United States v. Kiefer, supra,* a case in which a firearms dealer named Stewart twice sold semi-automatic guns to undercover ATF agents and had Kiefer, under his direction, alter the guns to fire automatically. *Id.* at 1112, 1114. Other than performing the task of altering the guns (which was done in Stewart's presence and/or at his behest), Kiefer's only other action with regard to the guns was to hand them to the ATF agents once he had finished the alterations. Kiefer neither arranged nor shared in the proceeds of the gun sales. Under those circumstances, the Eighth Circuit held that though Kiefer could properly be convicted of *making* illegal firearms, he could not be found guilty of transferring the guns because, under the Act, "a transferor is one controlling the ultimate disposition of the weapons, not a person without such control performing the simple act of physically handing the guns to another." *Id.* at 1114. According to the Eighth Circuit, "a transferor [must] have more of a proprietary interest in the weapon than just the mere transitory physical possession of it." *Id.*

Bogden contends that in this case he stands in the same position as Kiefer—that of a peripherally involved third party performing a simple service at Agent Final's request. Although we agree that in the instant scenario Bogden did play Kiefer's role of firearms maker, he also played the role (played by Stewart in the *Kiefer* case) of firearms seller. After all, it was Bogden who arranged the entire transaction with Final. Regardless of whose money Bogden used to pay for the shotgun, Bogden was the registered, legal owner. Clearly, the evidence was sufficient to support a finding that Bogden was, in the words of the *Kiefer* court, "controlling the ultimate disposition" of the shotgun.

Bogden would have us hold that the transfer took place at the moment Bogden accepted the cash from Agent Final, when the gun was still legal. We refuse to misinterpret the legislative enactment and dissect this transaction into artificially separate parts. First, though Final may have performed his side of the bargain at the time of payment, Bogden had not yet performed his part. Second, there is no doubt that both parties to the transaction clearly intended the sale and purchase of an illegal weapon from the start; the transcripts of Bogden's and Final's recorded conversations are replete with references regarding the illegality of the impending sale. For example, on the evening of April 7, 1986, when Final and Bogden were arranging the sale, Bogden stated, in response to Agent Final's expression of concern regarding the high price of the merchandise, "Well, when you're dealin' with somethin' that's gonna get ya 10 years in the federal penitentiary if you're caught with it. No questions asked … you buy illegal goods, you pay the price." This is only one of Bogden's several comments demonstrating that he knew precisely what Agent Final was looking for—an *illegal* sawed-off shotgun. There is also no doubt that the sale would not have gone through without Bogden's express agreement to saw the gun's barrel off to an illegal length. The fact that Agent Final paid for the gun prior to the

---

**4.** Bogden nonetheless argues that he is entitled to statutory exemption from prosecution. He ridiculously contends that, because he was making the gun for an undercover ATF agent, he was making it "on behalf of the United States" within the meaning of 26 U.S.C. §§ 5851, 5852. This argument is without merit. Both statutes require, at the very least, prior application to and approval by the Secretary of the Treasury

in order to qualify for such an exemption. *United States v. Clements,* 471 F.2d at 1255.

**5.** The term "transfer" is defined as "selling, assigning, pledging, leasing, loaning, giving away, or otherwise disposing of" a weapon illegally. 26 U.S.C. § 5845(j).

sawing-off does not make Bogden an uninvolved third party merely performing a service at Final's behest. Instead, Bogden's intent from its inception was to provide Agent Final with a shotgun of illegal length. The transfer was complete once Agent Final accepted the shotgun, at its agreed-upon length, from Bogden. Under these circumstances, the evidence was sufficient to convict Bogden of transferring a weapon illegally within the meaning of 26 U.S.C. § 5845(j).

## B.  *Legality of the Sentence*

Bogden next maintains that the sentences imposed by the court on the three charges of possession, making and transfer of an illegal firearm constituted unlawful pyramiding of punishment for a single transaction. In support of this contention, Bogden cites *United States v. Clements,* 471 F.2d 1253, where the Ninth Circuit held that a defendant could not be sentenced to consecutive sentences of the maximum imprisonment of 10 years on each of three counts of possession of a firearm on which the making tax [6] had not been paid, possession of an unregistered firearm, and unlawfully making a firearm where all three offenses arose out of a single act. *Id.* at 1254. The court reasoned that, to the maker of an illegal firearm, possession of that firearm is always incidental to making it. In so doing, the court assumed that anyone who exerted enough control over a weapon to perform the alterations that made it illegal would necessarily have met the Act's posession requirement, so that any instance of making an illegal firearm would necessarily result in violation of both provisions of the Act. After reviewing the National Firearms Act and its legislative history, the Ninth Circuit concluded that Congress did not intend to authorize multiple punishments for a single act, even though that one act may have constituted separate offenses of possession and making under the Act. *Id.* at 1254–57. Thus, the *Clements* court held that three consecutive sentences of 10 years each for two unlawful

possession convictions and one unlawful making conviction, all three of which arose out of one instance of making an illegal firearm, was, in effect, unlawful pyramiding of sentences. In *United States v. Kaplan,* 588 F.2d 71 (4th Cir.1978), the Fourth Circuit also held that though a defendant may be convicted under multiple counts of possession and manufacture of illegal firearms, the Act does not authorize consecutive maximum sentences for both offenses. *Id.* at 74–75. The court concluded that under the particular circumstances, a defendant may not be sentenced to more than the maximum sentence for one violation of the Act. *Id.*

■ Although this court has not addressed the precise issue raised in *Clements* and *Kaplan,* we have held that as long as the sentences imposed for two possessory offenses arising out of the same course of conduct do not exceed the statutory maximum for a single violation of the Act, they do not constitute unlawful pyramiding. *United States v. Tankersley,* 492 F.2d 962, 969 (7th Cir.1974). In the instant case, Bogden's concurrent five year sentences for convictions of both possessing and making an illegal firearm not only fall within the statutory maximum for a single offense,[7] the fact that the two sentences were imposed *concurrently* forecloses any argument that there was unlawful pyramiding of sentences. *United States v. Miles,* 772 F.2d 613, 617 (10th Cir.1985); *United States v. Edick,* 603 F.2d 772, 776–77 n. 5 (9th Cir.1979); *United States v. Ponder,* 522 F.2d 941 (4th Cir.1975), *cert. denied,* 423 U.S. 949, 96 S.Ct. 369, 46 L.Ed. 2d 285 (1975); *United States v. Jones,* 487 F.2d 676, 679 n. 1 (9th Cir.1973).

■ Although Bogden's sentence of probation on the illegal transfer of a firearm count was imposed consecutively to the other two counts, this does not constitute unlawful pyramiding of sentences under *Clements* either. Cumulative sentences are only proscribed where a single act constitutes more than one violation of section

---

**6.** 26 U.S.C. § 5801 provides, in part, that "... every importer, manufacturer and dealer in firearms shall pay a special (occupational) tax for each place of business...."

**7.** 26 U.S.C. § 5871 provides for a maximum period of imprisonment of ten years for one violation of the Act.

5861 of the Act. Courts have held that the making and transfer of an illegal firearm constitute separate and distinct acts; unlike the offenses of possession and making, a maker of an illegal firearm does not necessarily transfer the weapon as well, nor is a transferor always a maker. Therefore, consecutive sentencing for these two offenses is permissible. *United States v. Santiesteban*, 825 F.2d 779, 781 (4th Cir. 1987); *United States v. Coleman*, 707 F.2d 374, 379–80 (9th Cir.), *cert. denied*, 464 U.S. 854, 104 S.Ct. 171, 78 L.Ed.2d 154 (1983); *United States v. Kiliyan*, 504 F.2d 1153, 1155 (8th Cir.1974), *cert. denied*, 420 U.S. 949, 95 S.Ct. 1333, 43 L.Ed.2d 428 (1975). Thus, there was no unlawful pyramiding of Bogden's sentences.

Finally, Bogden argues that he should have been sentenced under the sentencing guidelines issued pursuant to the provisions of the Sentencing Reform Act of 1984, Pub.L. 98–473, 98 Stat. 1837, 1987 (1984) because he was sentenced after their effective date of November 1, 1987. As this court recently explained in *United States v. Stewart*, 865 F.2d 115 (7th Cir. 1988), the provisions of the Sentencing Reform Act only apply to those defendants whose offenses were committed on or after November 1, 1987. Even if there were any doubt as to the SRA's effective date as initially enacted, *see Stewart*, 117–118, Congress one month later amended the act on December 7, 1987, to make clear that it did not apply to offenses committed prior to November 1, 1987. Pub.L. 100–182, § 2(a), 101 Stat. 1266 (the Sentencing Act of 1987). Bogden was not sentenced until March of 1988, three months after Congress clarified the effective date, which leaves us without any ambiguity to resolve; since Bodgen's offenses were committed in April of 1986, the sentencing guidelines do not apply to him.

### III

The judgment of the district court is affirmed.

AFFIRMED.