UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

GORDIE HOLMAN, III,
          *Defendant-Appellant.*

No. 00-4771

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, Chief District Judge.
(CR-99-170)

Argued: September 28, 2001

Decided: December 18, 2001

Before WILKINSON, Chief Judge, and WIDENER and
WILLIAMS, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion. Judge Widener wrote
a dissenting opinion.

_____

## COUNSEL

**ARGUED:** Joseph Edward Zeszotarski, Jr., POYNER & SPRUILL,
L.L.P., Raleigh, North Carolina, for Appellant. Anne Margaret Hayes,
Assistant United States Attorney, Raleigh, North Carolina, for Appel-
lee. **ON BRIEF:** Janice McKenzie Cole, United States Attorney,
Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Gordie Holman, III was convicted in the United States District Court for the Eastern District of North Carolina of several charges stemming from his participation in an automobile theft ring. Holman claims that he is entitled to a new trial because of the district court's admission of an inculpatory statement by a non-testifying co-defendant. Because we conclude that the error is harmless, we hold that a new trial is not required and affirm Holman's convictions.

I.

On October 19, 1999, a grand jury in the Eastern District of North Carolina indicted Holman and Edward Earl Frazier for their involvement in an automobile theft ring through which stolen cars were being sold and transported from New York to North Carolina. Holman was charged with fourteen counts, consisting of one count of conspiracy, in violation of 18 U.S.C.A. § 371 (West 2000) (Count One); four counts of tampering with and altering motor vehicle identification numbers, in violation of 18 U.S.C.A. § 511 (West 2000) and 18 U.S.C.A. § 2 (West 2000) (Counts Two, Five, Eight, and Eleven); four counts of interstate transportation of a stolen motor vehicle, in violation of 18 U.S.C.A. § 2312 (West 2000) and 18 U.S.C.A. § 2 (Counts Three, Six, Nine, and Twelve); and five counts of possession of a stolen motor vehicle transported in interstate commerce, in violation of 18 U.S.C.A. § 2313 (West 2000) and 18 U.S.C.A. § 2 (Counts Four, Seven, Ten, Thirteen, and Fourteen). Frazier was charged with Counts One through Thirteen. Counts Two, Three, and Four pertained to a 1993 Acura Legend. Counts Five, Six, and Seven pertained to a 1993 Toyota Land Cruiser. Counts Eight, Nine, and Ten pertained to a 1993 Mazda RX7. Counts Eleven, Twelve, and Thirteen pertained to a 1994 Mercedes 500. Count Fourteen pertained to a 1994 Honda Accord.

The jury trial against Holman and Frazier began on February 28 and lasted three days. Holman was found guilty of the conspiracy offense and the transportation and possession offenses involving the Acura Legend and the Mazda RX7 (Counts One, Three, Four, Nine, and Ten). With respect to the Honda Accord, Holman was charged only with a possession offense, and he was found guilty of that charge (Count Fourteen). (J.A. at 461.) He was found not guilty of the remaining counts.

On October 6, 2000, the district court sentenced Holman to 21 months imprisonment on each count, to run concurrently, three years supervised release, and restitution in the amount of $29,215.75. Holman filed a timely notice of appeal to this Court on October 10, 2000. On appeal, Holman contends that he is entitled to a new trial on those charges for which he was found guilty because the district court improperly admitted an out-of-court statement made by Frazier, who did not testify, that directly implicated Holman, in violation of *Bruton v. United States*, 391 U.S. 123 (1968).

## II.

The key testimony constituting the alleged *Bruton* violation is that of Mark Johnson, a North Carolina Motor Vehicles Inspector who was in charge of investigating stolen vehicles. In the course of his investigations, Johnson had determined that five stolen vehicles were listed as having been registered in Frazier's name and as having been sold by Frazier. Johnson testified that after discovering Frazier's link with these stolen vehicles, he had an opportunity to speak to Frazier when Frazier called Johnson to request information about applying for a North Carolina automobile dealer's license. During the Government's questioning of Johnson about his conversation with Frazier, the following colloquy ensued:

> Q.   Did you ask [Frazier] at any time during those conversations where he got those vehicles, particularly Exhibits, Government's Exhibits 1 through — 1, 2, 4, 5, and 6?[1]

---

[1]These exhibits correspond to the Mazda, the Acura, the Land Cruiser, and the Mercedes for which Holman was charged and another Land Cruiser for which Holman was not charged.

A.   Yes.

Q.   Did he tell you?

A.   [Frazier] told me he bought them from — the very first one, the Land Cruiser, he said he had purchased that from a kid around the campus named Gordie, and it came from . . . a kid named Sid or Ced. He wasn't sure of his name.

Q.   And in each of these instances — well, did he say anything about the other vehicles?

A.   Yes, [Frazier] said that they came from a guy from New York by the name of Cedric through a friend of his named Gordie.

(J.A. at 159-60.)

Holman argues that admission of this testimony violated his Sixth Amendment right to confrontation. We review Holman's Sixth Amendment challenge de novo. *United States v. Williams*, 977 F.2d 866, 869 (4th Cir. 1992).

The Confrontation Clause of the Sixth Amendment guarantees the right of a criminal defendant "to be confronted with the witnesses against him." U.S. Const. amend. VI, cl. 3. The Supreme Court has held that a defendant's Sixth Amendment right to confront the witnesses against him is violated when an out-of-court statement made by his non-testifying co-defendant, which incriminates the defendant, is admitted into evidence at their joint trial.[2] *Bruton*, 391 U.S. at 127-28.

---

[2]The Supreme Court has recognized that *Bruton* is inapplicable where the statement is admissible pursuant to a "firmly rooted hearsay exception." *Lilly v. Virginia*, 527 U.S. 116, 124 (1999). This Circuit has held that Federal Rule of Evidence 801(d)(2)(E) is such a firmly rooted hearsay exception. *See United States v. Shores*, 33 F.3d 438, 442 (4th Cir. 1994). Under Rule 801(d)(2)(E), a statement of the defendant's co-conspirator is admissible against the defendant if it was made "during the

The Government argues that Frazier's statement does not violate *Bruton* because Frazier's statement cannot be characterized as a "confession."[3] We need not resolve this issue because, to the extent the error was a *Bruton* error, the error is harmless.[4] *See, e.g.*, *Schneble v. Florida*, 405 U.S. 427, 430 (1972) (applying harmless error analysis to a *Bruton* violation); *United States v. Clarke*, 2 F.3d 81, 85 (4th Cir.

---

course and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). Holman was charged and convicted of a conspiracy involving Frazier, but the Government conceded at oral argument that Frazier's statement to Johnson was not made in the course of the conspiracy. Thus, by the Government's concession, Rule 801(d)(2)(E) does not apply to render *Bruton* inapplicable.

[3]There is some support in this and other circuits for the Government's position that *Bruton* is limited to confessions. *See, e.g.*, *United States v. Locklear*, 24 F.3d 641, 646 (4th Cir. 1994) (concluding that the co-defendant's statement, which was not a confession, did not violate *Bruton* because *Bruton* is limited under *Richardson v. Marsh*, 481 U.S. 200, 208 (1987), to cases involving "facially incriminating confessions"); *see also Vincent v. Parke*, 942 F.2d 989, 990 (6th Cir. 1991) (refusing to find *Bruton* error because, inter alia, *Bruton* was inapplicable when the non-testifying co-defendant's statement cannot be characterized as a confession). *But see United States v. Truslow*, 530 F.2d 257, 263 (4th Cir. 1975) (rejecting the government's argument that *Bruton* is strictly limited to confessions made to law enforcement officers).

[4]Regardless of whether Frazier's statement violated *Bruton*, it is clear that Frazier's statement was inadmissible against Holman as hearsay. Thus, we have no doubt that Frazier's statement was improperly admitted; the only question is whether it was improperly admitted pursuant to *Bruton* or pursuant to hearsay rules. Resolution of the nature of the error is relevant only to the extent it governs whether we apply harmless error review under *Chapman v. California*, 386 U.S. 18, 24 (1967) (holding that a constitutional error must be harmless beyond a reasonable doubt), or under Federal Rule of Criminal Procedure 52(a) (providing that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded"). Because we conclude that the error was harmless under either standard, we analyze the error under the *Chapman* standard, which is more favorable to Holman. *See United States v. Seidel*, 620 F.2d 1006, 1013 (4th Cir. 1980) (noting that the standards under *Chapman* and Rule 52(a) are different and that the former is more protective of the defendant's rights than the latter).

1993) (noting that the Court need not resolve an alleged *Bruton* violation when the alleged error is harmless).

### III.

In deciding whether a constitutional error was harmless, a reviewing court must be satisfied that the error was harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 24 (1967). In applying the harmless error standard, "we must ask whether it is clear beyond a reasonable doubt that the jury would have returned [a guilty] verdict[ ]" against Holman even if Frazier's statement had not been introduced. *United States v. Blevins*, 960 F.2d 1252, 1263 (4th Cir. 1992). This analysis "requires a quantitative assessment of the likely impact of the error measured against the other evidence presented at trial." *Id.*

The Government's case against Holman was based almost entirely upon the testimony of Cedric Kennedy, the leader of the automobile theft ring. Kennedy testified at length regarding Holman's involvement with the stolen vehicles charged in Holman's substantive offenses. (J.A. at 238-44.) Specifically, Kennedy testified that Holman was a "middleman" between Kennedy and Frazier with respect to the sales of the Acura Legend and the Mazda RX7. (J.A. at 238, 249, 261-62, 279.) Kennedy further testified that Holman had "basically nothing to do" with either the sale of the Land Cruiser or the Mercedes. (J.A. at 267, 279.)

As compared with Kennedy's testimony, which implicated Holman only in the sales of the Acura and the Mazda, Frazier's statement implicated Holman as the middleman in the sales of the Acura, the Mazda, the Mercedes, and the Land Cruiser. (J.A. at 160) (stating that each of the vehicles "came from a guy from New York by the name of Cedric through a friend of his named Gordie"). The jury, however, did not convict Holman of the charged offenses relating to each of these vehicles. Instead, it acquitted Holman of the substantive counts relating to the Land Cruiser and the Mercedes and convicted Holman of the possession and transportation counts relating to the Acura and the Mazda. (J.A. at 20-26, 458, 461.) Therefore, the verdict demonstrates that the jury credited Kennedy's testimony and disregarded Frazier's out-of-court statement.

Moreover, Johnson's testimony with respect to Frazier's statement played a very minor role in Holman's trial. The testimony itself was brief, lasting only a few minutes, and Frazier's statement was not mentioned in opening or closing arguments. By comparison, Kennedy's testimony lasted for several hours and constituted the crux of the Government's case against Holman.

Viewing the trial as a whole, it is clear that the Government's case rose and fell on the jury's assessment of Kennedy's credibility, and Holman had ample opportunity to test Kennedy's credibility through cross-examination. When Frazier's statement is measured against Kennedy's testimony and the jury's verdict, we are convinced beyond a reasonable doubt that the jury's verdict simply did not turn on Johnson's minimal recitation of Frazier's statement. Therefore, we do not deem the error committed at trial to warrant reversal of Holman's convictions.

## IV.

Because the admission of Frazier's statement was harmless beyond a reasonable doubt, Holman is not entitled to a new trial. Accordingly, we affirm Holman's convictions.

*AFFIRMED*

WIDENER, Circuit Judge, dissenting:

The majority's opinion finds that to the extent there was a *Bruton* error, such error was harmless. Because I think the evidence remaining after excluding the *Bruton* statements does not meet the high standard of *Chapman v. California*, I respectfully dissent.

In *Chapman*, the Supreme Court explained that a constitutional error is not harmless if "there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Chapman v. California*, 386 U.S. 18, 23 (1967) (quoting *Fahy v. Connecticut*, 375 U.S. 85 (1963)). In applying this standard, a court is to determine on the basis of its "own reading of the record and on what seems to [it] to have been the probable impact . . . on the minds of

an average jury," whether the constitutionally objectionable evidence, here the inculpatory statements of a non-testifying co-defendant, is sufficiently prejudicial to require reversal. *Schneble v. Florida*, 405 U.S. 427, 432 (1972). If a court reads the record and finds that the remaining evidence "overwhelmingly" establishes the defendant's guilt, then the constitutional error has not substantially prejudiced the defendant. In other words, when compared to the remaining evidence, the exclusion of the *Bruton* statement does not render the government's case less persuasive. 405 U.S. at 432.

The majority argues that, by convicting on the counts to which Cedric Kennedy's testimony inculpated Holman and acquitting him where the only evidence of guilt was contained in Frazier's statement, the jury disregarded the constitutionally impermissible evidence. The majority further explains that Kennedy's testimony lasted for several hours while Frazier's statement, introduced through Agent Mark Johnson, "was brief, lasting only a few minutes." These two facts lead the majority to conclude that admitting Frazier's statement through Johnson's testimony was harmless beyond a reasonable doubt.

As I read the record, I think there is simply too much uncertainty in the majority's divination of the jury's mind to conclude that admission of the *Bruton* statement was harmless beyond a reasonable doubt. To me, the more plausible reading of the evidence, and one that instills in me a reasonable doubt, is that the jury only convicted Holman on the counts where corroborative evidence was introduced. That is to say, the jury convicted Holman only where the testimony given by Kennedy and Frazier overlapped, or was corroborated in some other way. For instance, Holman was convicted of the substantive counts with respect to the Mazda and the Acura. On both of these counts, both Kennedy's testimony and Frazier's statement implicated Holman. See JA 238, 249, 262-62, 279. To the contrary, Holman was acquitted on the counts pertaining to the Land Rover and the Mercedes. In that respect, Kennedy testified that Holman had little if anything to do with the transactions involving these automobiles, while Frazier's statement implicated Holman. See JA 160, 284. Monique Johnson's testimony was equivocal regarding Holman's involvement. See JA 340. So, the jury properly applied the reasonable doubt standard and acquitted Holman.

Even as to the gold Honda, there was evidence corroborating Kennedy's implication of Holman. Agent Johnson observed Holman driving the Honda and pulled him over, at which point Holman produced forged registration documents. See JA 136. It is apparent that Johnson's testimony as to this event took place in moments, and yet had no less impact on the jury than Kennedy's. Indeed, the fact that Frazier's statement was provided by a law enforcement officer may have given it more credibility, and thus more corroborative impact, no matter how brief it was, in comparison to the length of Kennedy's testimony. Therefore, in the absence of a conviction where Kennedy alone provided evidence, the record does not show, I think, that the jury disregarded Johnson's testimony as to Frazier's statement.

All of which leads me to the conclusion that there is "a reasonable possibility," *Chapman* at 23, that the *Bruton* statements contributed to the conviction.

*Bruton* statements are strong medicine. In recognition of this, the Supreme Court requires "overwhelming" evidence, *Schneble*, at 432, to outweigh the prejudice presented by the constitutional error. In the absence of Frazier's statement, and in light of the jury's conviction only on counts where corroborating evidence was presented, I cannot say that the remaining evidence was so overwhelming here as to vitiate the constitutional error. Certainly, to me, "there is a reasonable possibility that the evidence complained of *might have* contributed to the conversation." *Chapman*, at 23. (Italics added.)

I would grant a new trial.